[No. 2468-3.   Division Three.   February 14, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. LAVONNE
B. BAILEY, *Appellant*.

*William Keylor Smith*, for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney*, and *Carl L. Johnson, Deputy*, for respondent.

MUNSON, J.—Appellant, LaVonne B. Bailey, appeals from a jury conviction for the second–degree assault of her husband, Robert. The issues raised on appeal are (1) whether the trial court gave proper instructions on self–defense and (2) whether two other instructions were prejudicial given the facts of this case. We find error and reverse.

LaVonne and Robert Bailey had been married about 2 months when the assault occurred. Robert had been drinking prior to this incident and during that time had struck Mrs. Bailey's 13–year–old son and had threatened her.[1]

After 4 days of drinking, Mr. Bailey became increasingly abusive. While the Baileys were driving to town and discussing a divorce, he struck her in the face, splitting her lip, causing swelling in her face and pains in her neck. She immediately drove to the Walla Walla police station where she asked for protection. The officer on duty told her that if she still felt the same way the next day, she could come in and file a complaint. He did, however, make arrangements to have a College Place police officer meet her at her home. While the officer was there, Mr. Bailey packed his belongings and left the house, saying he was leaving town on the next bus.

Mrs. Bailey testified that she then arranged to take a friend of hers into town and she also wanted to see if her husband had actually left town. If he had not, she planned to take her children with her to a motel for the night since the lock on her house was broken and she was afraid her husband might return. As Mrs. Bailey got into her car, she found a knife her daughter used to trim her horses' hooves; she placed it in her purse.

Mrs. Bailey drove downtown and went into the Main Tavern; Mr. Bailey was there. He began taunting her about her mother who had died about 4 months before. He testified:

> I started in on her mother, and she asked me if I wouldn't stop, and I knew I was getting close to home, . . . I intensified my efforts and kept at it . . .
>
> . . . I had slapped her pretty good that afternoon and threatened her quite a bit.

---

[1]Mrs. Bailey, who was 40 years old, suffered from a heart condition, and Robert had taken her to the local hospital several times during the course of their brief marriage. A former husband of Mrs. Bailey, while he was drinking, had also beaten her so severely she had had to be hospitalized on several occasions.

She left the tavern hysterical and incoherent. Police Officer Stroe observed her heading toward Manuel's Tavern "shouting that she needed help," but she refused his offer of assistance. Mrs. Bailey testified she went to Manuel's because Mr. Bailey would not be there, given "the way he felt about Mexicans and such, . . ." Mrs. Bailey is part Mexican; Mr. Bailey had taunted her earlier that day by calling her a "wetback." Mr. Bailey also said that she could not have known he would be at Manuel's because he never went there.

The evidence as to the time interval between the above-described occurrence and the one at Manuel's Tavern, as well as what happened when Mrs. Bailey entered Manuel's, is conflicting and confusing. Mr. Bailey was apparently sitting just inside the front door when she entered; he said when she walked in he "started in on her again," and she was afraid he was going to beat her up. When asked whether she tried to walk out, he testified:

> I don't think she very well could have. . . . I was right there by the door. I know that she knew that if she tried, until she could either get me calmed down or something, there was no way she could get past me if I didn't want her to. . . . I took a swing at her, I know. I wasn't in a very good mood by then.

She testified that all she remembered seeing was his shirt and his saying something about her mother again.

The only eyewitness who saw what happened at the time Mrs. Bailey walked in the front door was the bartender. He testified that Mr. Bailey swung his arm to one side, close to her face, and pushed her. They started struggling and fell to the floor. Officer Stroe walked in at that moment. He testified the Baileys were exchanging blows, that she was "over the top of him and stabbing or jabbing away with her hand." Mr. Bailey was taken to the hospital with two stab wounds from the trimming knife, one of which caused the collapse of his left lung.

The trial court denied Mrs. Bailey's proposed instruction[2] and gave two instructions on self-defense to which Mrs. Bailey excepted:

Court's instruction No. 9:

The use of force upon or toward the person of another shall not be unlawful whenever used by a party about to be injured in preventing or attempting to prevent an offense against his person in case the force is not more than shall be necessary. [Drawn from RCW 9A.16-.020(3).]

Court's instruction No. 10:

"Necessary" means that no reasonably effective alternative to the use of force appears to exist and that the amount of force used was reasonable to effect the lawful purpose intended. [RCW 9A.16.010.]

Mrs. Bailey contends these instructions are insufficient and do not comply with the law of this state because neither provided that the assault was to be considered in light of all the facts and circumstances known to the defendant. including those known substantially before the incident. Neither of the statutes from which these instructions are drawn provides that the jury view the circumstances as they reasonably might have appeared to the defendant at that time. Historically, this frame of reference has been included in instructing a jury on self-defense. *See State v. Wanrow*, 88 Wn.2d 221, 233–36, 559 P.2d 548 (1977) which contains citation of past cases. *Cf. State v. Penn*, 89 Wn.2d 63, 66–67, 568 P.2d 797 (1977); *People v. Moore*, 43 Cal. 2d 517, 275 P.2d 485 (1954). Such an instruction is proper if it has been proposed. The procedural posture here is unlike *State v. Strand*, 20 Wn. App. 768, 775–79, 582 P.2d 874 (1978), where the defendant neither proposed a proper instruction nor took exception to the instruction given.

---

[2]"It is lawful for a person who is being assaulted to defend herself from attack if, as a reasonable person, she has grounds for believing and does believe that bodily injury is about to be inflicted upon her. In doing so, she may use all force and means which she believes to be reasonably necessary and which would appear to a reasonable person in the same or similar circumstances to be necessary to prevent the injury which appears to be imminent."

■ When the legislature adopted the new criminal code, effective July 1, 1976, it provided that "provisions of the common law relating to the commission of crime . . . insofar as not inconsistent with the Constitution and statutes of this state, shall supplement all penal statutes of this state . . ." RCW 9A.04.060. By adopting this new code the legis-ature did not change the common–law requirement that in considering self–defense a jury should consider all the facts and circumstances known to the defendant, including those known substantially before the incident. *See State v. Bradley,* 20 Wn. App. 152, 154–55, 578 P.2d 1316 (1978).

■ Necessity must also be considered by the jury standing in the shoes of the defendant. The applicable standard is that persons may use that degree of force necessary to protect themselves as a reasonably prudent man or woman would use under the conditions appearing to them at the time. *State v. Dunning,* 8 Wn. App. 340, 342, 506 P.2d 321 (1973). Neither instruction No. 9 nor 10 conveys that standard; we find the instructions inadequate and prejudicial to the defendant, which finding requires a new trial. *Cf. State v. Humphries,* 21 Wn. App. 405, 412, 586 P.2d 130 (1978).

Inasmuch as there will be a new trial, we comment upon the giving of instruction No. 11:

You are instructed that no person can by her *lawless* acts create a necessity for acting in self–defense and thereupon assault and injure the person with whom she seeks the difficulty, and then interpose as a defense the plea of self–defense. Self–defense is the plea of necessity as shield only to those who are without fault in occasioning an affray, and acting under it. Therefore, if you find from the evidence beyond a reasonable doubt that the defendant was *the aggressor* and that by her own acts and conduct she provoked or commenced the affray, then the plea of self–defense is not available to her, unless before inflicting such injury, she in good faith sought and endeavored to withdraw and abandon the conflict.

(Italics ours.)

We are not persuaded, under the record before us, that Mrs. Bailey committed a "lawless act" which created a necessity for acting in self-defense. As we understand the State's argument, it is that after her husband left the home, she armed herself with a knife, got into her automobile, and drove into Walla Walla, where she sought him out and stabbed him. While this is a proper instruction in a proper case, *see State v. Hopkins,* 71 Wn.2d 10, 426 P.2d 496 (1967); *State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963); *State v. Turpin,* 158 Wash. 103, 290 P. 824 (1930), the facts here are similar to those in *State v. Upton,* 16 Wn. App. 195, 204, 556 P.2d 239 (1976), where the court held that the facts then before it did not suffice to premise a finding that the "defendant created the necessity to act in self-defense through some illegal or unlawful act."

Likewise, the use of the term "aggressor" in the instruction is suspect, there being a question raised as to whether Mrs. Bailey provoked or commenced an attack upon her husband. *Cf. State v. Currie,* 74 Wn.2d 197, 443 P.2d 808 (1968); *State v. Hawkins,* 89 Wash. 449, 154 P. 827 (1916). The State relies upon a statement made by the defendant to a police officer several hours after her arrest in which she told him that she had put the knife in her purse in case she had further trouble with her husband, and further that she had been heard to say after the incident in the Main Tavern that she was going to "smack him" and then called her husband "an SOB." Apparently these statements are the bases for the use of the term "aggressor." At this juncture, not knowing what the evidence on a new trial might be, we hesitate to pass upon the giving of this language under the facts which may arise on new trial. We do, however, ask that before this instruction is given, a reexamination of the evidence be made to assure that there is support for giving it. *Cf.* WPIC 16.04.

Finally, Mrs. Bailey contends that instruction No. 12, which reads:

You are instructed that no words of abuse, insult or reproach addressed to a person or uttered concerning her,

> however prievous [*sic*] the words may be, will justify her in an assault by means of force likely to produce great bodily injury.

was error inasmuch as her theory of self–defense was not based only on words of abuse or insult. While the instruction is proper if there is evidence to support it, this instruction, as was instruction No. 11, should be reevaluated in light of the evidence produced at the new trial.[3]

Judgment is reversed and the case remanded for a new trial.

GREEN, C.J., and ROE, J., concur.

---

[3]We do note that instructions Nos. 9 and 10, while favorable to Mrs. Bailey, were couched in the masculine gender, while those unfavorable to her, instructions Nos. 11 and 12, were couched in the feminine gender. In *State v. Wanrow, supra* at 240, the court noted "the persistent use of the masculine gender leaves the jury with the impression the objective standard to be applied is that applicable to an altercation between two men" and at least implies the impression created is a misstatement of the law. Thus, preferably, a woman defendant should be entitled to have jury instructions framed in the feminine gender in order to convey to the jury that they consider her actions in the light of her own perceptions and experience.