[No. 14302–6–I.   Division One.   November 12, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM
DEAN ARTHUR, *Appellant.*

*Julie A. Kesler* of *Washington Appellate Defender
Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ruth A. Rob-
inson, Deputy,* for respondent.

RINGOLD, J.—The defendant, William Dean Arthur, appeals the judgment and sentence imposed upon a jury verdict finding him guilty of second degree assault. The sole issue here is whether the court erred in giving the aggressor instruction to the jury. We hold that the instruction is vague and reverse.

Arthur was convicted of second degree assault with a deadly weapon for stabbing Terry Waterhouse. Waterhouse testified at trial that he was in the parking lot at a convenience store with several friends. He said Arthur approached him, was drunk and abusive, and was "in his face." He pushed Arthur to get him out of his way, and Arthur fell down. Waterhouse and his friends then left the parking lot and went to a tavern.

Later that evening Waterhouse returned with friends to the store parking lot and parked next to Stephanie Thompson's car. Waterhouse said that Arthur pulled into the space next to her car. Arthur then pulled out of the parking lot at a high speed, hit Thompson's car slightly, and ended up in a ditch. Waterhouse said he went over to Arthur's car to prevent him from leaving the scene of the accident. When he reached into the car, Arthur stabbed him. Waterhouse's friends testified that Waterhouse had a stab wound when he returned to the parking lot. The wound was shallow, requiring only 2 to 5 stitches.

Arthur testified that he was not drunk that evening, and that he initially approached Waterhouse because he thought he recognized him. He said Waterhouse was abusive and shoved him into the ground. Arthur further testified that he acted in self–defense in the second confrontation because he feared Waterhouse would attack him.

The court gave the following instruction (the aggressor instruction) over defense objections:

> No person may by any unlawful act create a necessity for acting in self–defense and thereupon use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor and that defendant's acts

and conduct provoked or commenced the fight, then self-defense is not available as a defense. WPIC 16.04.

Arthur argues there was no evidence of any unlawful act by the defendant. His counsel noted in the course of argument that all of the State's witnesses characterized the hitting of Thompson's car as an accident. The State responds that all of the facts indicate that the defendant intended to resort to physical violence and therefore the instruction was sufficient to permit each party to argue the theory of the case. It was the State's theory that the defendant deliberately drove up to and threatened Waterhouse, then attempted to leave rapidly and in so doing, hit Thompson's car.

Aggressor instructions in various forms have long been used in Washington courts. *See, e.g., State v. McConaghy,* 84 Wash. 168, 170–71, 146 P. 396 (1915); *State v. Turpin,* 158 Wash. 103, 113, 290 P. 824 (1930); *State v. Currie,* 74 Wn.2d 197, 199, 443 P.2d 808 (1968); *State v. Bailey,* 22 Wn. App. 646, 650–51, 591 P.2d 1212 (1979). The precise language of the instruction in this case has been before the court on two occasions. *State v. Sampson,* 40 Wn. App. 594, 599–600, 699 P.2d 1253 (1985); *State v. Heath,* 35 Wn. App. 269, 271, 666 P.2d 922 (1983). In neither case was the challenge based on vagueness.

■ The problem with the instruction is that determination of whether there was an "unlawful act" requires us to speculate and conjecture as to which act of the defendant might have been characterized by the jury as "unlawful." While no court has considered this question with regard to the aggressor instruction, a number of cases have dealt with the issue in a different context.

In *State v. Upton,* 16 Wn. App. 195, 203, 556 P.2d 239 (1976), the instruction challenged stated that "[N]o man can by his own lawless acts, create a necessity for acting in self–defense . . ." The court stated:

An instruction on an issue or theory which is unsupported by the evidence is improper. *State v. Piche,* 71

Wn.2d 583, 430 P.2d 522 (1967); *State v. Jackson,* 70 Wn.2d 498, 424 P.2d 313 (1967); *State v. Woods,* 163 Wash. 224, 1 P.2d 219 (1931). Unlike *State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963), where the propriety of the "lawless acts" language in the first sentence of this instruction was also raised, no evidence was introduced in the present case indicating the defendant had committed illegal or unlawful acts which might have occasioned the assault. Reference to "lawless acts" therefore should be omitted if, upon retrial, no evidence is introduced upon which a jury could premise a finding that the defendant created the necessity to act in self–defense through some illegal or unlawful act. *Cf. State v. Thomas, supra.*

*Upton,* at 204.

The Supreme Court in *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982) considered the vagueness argument with respect to the statute regarding failure "without lawful excuse" to provide true information, "lawfully required of [an individual] by a public servant." RCW 9A.76.020(1). The court stated:

The problems with the statute before us are obvious. For example, when must a citizen answer inquiries, and when does he have "lawful excuse" not to answer? What is "lawfully required" in the way of reports or information? May any "public servant", as defined in RCW 9A.04.110(22), demand information or only those charged with investigating or enforcing laws and regulations? May any citizen be stopped at any time—or only when there is suspicious conduct, or in high crime areas, or only in the course of investigating a suspected or known crime? The possible applications and interpretations are nearly endless.

The determination of what information is "lawfully required" under this statute is a subjective one, left to the unfettered discretion of not only police officers, but virtually any public servant. Likewise, the term "lawful excuse" is nowhere defined in RCW Title 9A, and a citizen who is being questioned must necessarily guess as to whether his claim of privilege not to answer under the Fifth Amendment or pursuant to any other case or statutory exemption will be a "lawful excuse".

(Footnote omitted.) *White,* at 99–100.

Again, the Supreme Court in *State v. Hilt,* 99 Wn.2d 452, 662 P.2d 52 (1983) held unconstitutionally vague a statute which provides any person "admitted to bail . . . and who knowingly fails without lawful excuse to appear as required is guilty of bail jumping." Former RCW 9A.76.170. The court stated that the statute was "deficient in terms of providing guidelines to the meaning of lawful excuse. The phrase is nowhere defined and predicting its potential application would be a guess, at best." *Hilt,* at 455.

In *State v. Richmond,* 102 Wn.2d 242, 683 P.2d 1093 (1984), the court held unconstitutionally vague the statute which provides "[e]very person who . . . [w]ilfully omits, without lawful excuse, to furnish necessary food . . . shall be guilty of the crime of family desertion or nonsupport." Former RCW 26.20.030(1)(b), (c). The court was unable to find any statutory or case authority that would specify and delimit the "lawful excuses" that could be asserted as a defense under the statute. Accordingly, it held the statute void for vagueness. *Richmond,* at 248.

We see no distinction between the use of the phrase "lawless act" or "lawful excuse" and "unlawful act" in this instruction. The denial of the self–defense theory where the conduct of the defendant could be deemed accidental is not rational, reasonable, or fair. Arthur contended that the only act here which could be considered as provoking or precipitating the confrontation would have been the accidental collision with Thompson's car, but at that point he was withdrawing from the scene. Under the instruction given, if the jury were to find the collision accidental, they could determine that the act constituted reckless or negligent driving. They might also conclude that this was an unlawful act which provoked the incident leading to the stabbing. According to the instruction, they would be precluded from considering Arthur's claim of self–defense.

The instruction is too vague and too broad. An aggressor instruction must be directed to intentional acts which the jury could reasonably assume would provoke a belligerent response by the victim. The aggressor instruction here

effectively vitiated any claim of self–defense to be considered by the jury.

Judgment and sentence is reversed and the cause is remanded for a new trial.[1]

SCHOLFIELD, A.C.J., and SWANSON, J., concur.

---

[1]Few situations come to mind where the necessity for an aggressor instruction is warranted. The theories of the case can be sufficiently argued and understood by the jury without such instruction.