[No. 15529–6–I.   Division One.   July 23, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ERAINA KIM HARDY, *Appellant.*

---

*Mark W. Muenster* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Schwartz* and *Celeste Stokes, Deputies,* for respondent.

SCHOLFIELD, C.J.—Eraina Hardy was found guilty by a jury of murder in the second degree while armed with a deadly weapon. She appeals, assigning error to the trial court's giving or refusing to give certain instructions. We reverse and remand for a new trial.

On June 12, 1984, Hardy, in the presence of several witnesses, became involved in a name–calling dispute with Kristina Peek. At one point, Hardy called Peek a whore.

The dispute escalated into a physical altercation ending with Hardy stabbing Peek to death. This occurred at about 3 a.m. in the dayroom of Broadview Women's Shelter in Seattle.

Error is assigned to the following instructions concerning self–defense:

> It is a defense to the charge of Murder or Manslaughter that the homicide was legally justified as defined in these instructions. Legal justification is the concept known as self defense.
>
> Homicide is legally justified when committed in the lawful defense of the slayer. The self defense is lawful if, at the time of the slaying, a reasonably prudent person, standing in the shoes of the slayer, seeing what the slayer sees and knowing what the slayer knows of the deceased, and being aware of prior experiences with the deceased and the surrounding circumstances at the time of the slaying, would have believed that she was about to be injured. The force used, under any circumstances, cannot be more than is necessary.
>
> Necessary means that no reasonably effective alternative to the use of force appeared to exist and the amount of force used was reasonable to effect the lawful purpose intended.
>
> The kind and degree of force which is considered necessary for purposes of self defense is that amount which a reasonable, prudent person would use in the same situation based on all information known to the slayer of the deceased, past experiences with the deceased and surrounding circumstances present at the time of the incident.
>
> The State bears the burden of proving the absence of legal justification (self defense) for the homicide beyond a reasonable doubt. The State has met this burden if it has proven, beyond a reasonable doubt, each of the elements of the crime charged.

Instruction 22.

> No person may by any unlawful act create a necessity for acting in self–defense or defense of another and thereupon kill, use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor and

that the defendant's acts and conduct provoked or commenced the fight, then self–defense or defense of another is not available as a defense.

Instruction 23 (WPIC 16.04), and the refusal of the court to instruct as follows:

It is a complete defense to a charge of murder in the second degree and manslaughter in the first and second degree that the force used was lawful as defined in this instruction. The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that she is about to be injured and when the force used is not more than necessary. "Necessary" force is that degree of force which would be used by a reasonable person under the conditions appearing to the defendant at the time.

In judging the defendant's actions, you should attempt to place yourself, as a reasonable person, in her position at the time of the incident. You may therefore consider the defendant's knowledge, beliefs and state of mind at the time of the alleged acts. You may consider all of the facts and circumstances known to the defendant, and all other factors which bear upon the reasonableness of her actions.

In determining whether the defendant reasonably believed herself to be in danger of injury, you should consider the facts and circumstances as they appeared to the defendant at that time, not as they might now appear.

If the defendant reasonably but mistakenly believed herself to be in danger of injury, she had a right to defend herself against that injury by the use of reasonable force, even though she was not truly in such danger.

Defendant's proposed jury instruction 21.

■■ The following criteria apply to instructions in a criminal case:

[I]nstructions [must] be read as a whole. *See State v. Dana*, 73 Wn.2d 533, 439 P.2d 403 (1968); *Roberts v. Goerig*, 68 Wn.2d 442, 413 P.2d 626 (1966). If instructions are such as are readily understood and not misleading to the ordinary mind, they are sufficiently clear. *State v. Ferrick*, 81 Wn.2d 942, 506 P.2d 860 (1973). *State v. Dana, supra.* A further test of sufficiency is

whether, from the instructions given, counsel may satisfactorily argue his theory of the case to the jury. *State v. Dana, supra; State v. Long,* 19 Wn. App. 900, 578 P.2d 871 (1978).

*State v. Foster,* 91 Wn.2d 466, 480, 589 P.2d 789 (1979).

Hardy argues that her proposed instruction 21 was essential to inform the jury that the use of force may be lawful even if the defendant's fear of injury is mistaken. In support of this argument, she quotes the following from *State v. Miller,* 141 Wash. 104, 250 P. 645 (1926):

The appellants need not have been in actual danger of great bodily harm, but they were entitled to act on appearances; and if they believed in good faith and on reasonable grounds that they were in actual danger of great bodily harm, although it afterwards might develop that they were mistaken as to the extent of the danger, if they acted as reasonably and ordinarily cautious and prudent men would have done under the circumstances as they appeared to them, they were justified in defending themselves.

*Miller,* at 105–06. This quotation is preceded by this statement:

The true test was, what was the condition at the time the assault was made; and the appellants' right to resist force with force is dependent upon what a reasonably cautious and prudent man, situated as were the appellants, would have done under the condition then existing. If the appellants, at the time of the alleged assault upon them, as reasonably and ordinarily cautious and prudent men, honestly believed that they were in danger of great bodily harm, they would have the right to resort to self defense, and their conduct is to be judged by the condition appearing to them at the time, not by the condition as it might appear to the jury in the light of testimony before it.

*Miller,* at 105.

Instruction 22 quite clearly informed the jury that it was to evaluate the conditions and circumstances from the standpoint of the defendant. It made the subjective standard for self–defense "manifestly apparent to the average juror." *State v. Fischer,* 23 Wn. App. 756, 759, 598 P.2d

742, *review denied,* 92 Wn.2d 1038 (1979).

Further, because instruction 22 was not misleading and permitted defense counsel to argue Hardy's theory of the case to the jury, the trial court did not err by refusing to give her proposed instruction. So long as the jury was informed that the defendant's fear of injury, viewed from her standpoint, must be reasonable, it is unnecessary to further explain that an incorrect fear may still be reasonable. *See State v. Jones,* 95 Wn.2d 616, 624, 628 P.2d 472 (1981). This additional explanation would add nothing to instruction 22.

Hardy next argues that the definition of "necessary" in instruction 22 conflicts with instruction 24, which reads:

> One who is where she has a lawful right to be is under no obligation to retreat when attacked. She may stand her ground and defend herself from such attack, and in doing so she may use all force and means that would appear to a reasonable person in the same situation to be necessary to prevent the attack.

She points out that the same definition of "necessary" as used in instruction 22 was held to be inadequate in *Fischer.* In that case the instruction was inadequate because it did not make the subjective standard manifestly apparent to the average juror. The court said:

> the court's instruction [on self-defense] can stand only if it included the essential element that the person using the force need only reasonably believe, in light of all the facts and circumstances known to him, that he or another person is in danger. *State v. Ladiges,* 66 Wn.2d 273, 401 P.2d 977 (1965); *State v. Miller,* 141 Wash. 104, 250 P. 645 (1926); *State v. Dunning,* 8 Wn. App. 340, 506 P.2d 321 (1973). As the court noted in *State v. Bailey,* [22 Wn. App. 646, 591 P.2d 1212 (1979)] at 650:
>> Necessity must . . . be considered by the jury standing in the shoes of the defendant. The applicable standard is that persons may use that degree of force

necessary to protect themselves as a reasonably prudent man or woman would use under the conditions appearing to them at the time.

*Fischer,* at 759. As seen, this element was contained in the instruction given to the jury.

■ Hardy maintains that the jury should have been instructed upon an imperfect defense. No instruction was proposed and none given on this subject. There was no error. *State v. Rhinehart,* 92 Wn.2d 923, 927, 602 P.2d 1188 (1979).

Finally, Hardy contends that there was insufficient evidence to support the giving of instruction 23 concerning aggression. Her testimony was that she stood up as the decedent, Kristina Peek, advanced and that Peek choked her to a point that she became scared and struck back with a knife she had been carrying for protection during her return home from a job late that night. Three eyewitnesses testified that Hardy advanced toward Peek, who was seated, Peek stood up and grabbed or pushed at Hardy and thereupon Hardy grabbed and pushed in return, pulled the knife from her pocket and stabbed Peek fatally. As in *State v. Thomas,* 63 Wn.2d 59, 65, 385 P.2d 532 (1963), *overruled on other grounds in State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159, *cert. denied,* 419 U.S. 1053 (1974), where a similar instruction was given, "[t]his conduct placed the defendant in the role of an aggressor and the cause of the affray sufficient to raise a jury question on this issue." *See also State v. Upton,* 16 Wn. App. 195, 203–04, 556 P.2d 239 (1976), *review denied,* 88 Wn.2d 1007 (1977).

Additionally, however, Hardy maintains ·that the phrase "unlawful act" in the trial court's instruction rendered it impermissibly vague since that phrase was not defined with respect to the particular circumstances of the case. We agree, and find that *State v. Arthur,* 42 Wn. App. 120, 708 P.2d 1230 (1985) controls here and requires reversal.

■ In *Arthur,* the defendant was convicted of second degree assault. At trial, he pleaded self–defense, and the aggressor instruction was given. WPIC 16.04. Prior to the assault, the defendant had accidentally collided with the car of the victim's girl friend while attempting to leave a parking lot. Under the circumstances of the case, we concluded that the jury might have viewed the accident as resulting from reckless or negligent driving, and determined that such was an "unlawful act", which precluded the defendant from asserting self–defense in the ensuing altercation. The problem, as we saw it, was that the instruction referred to "unlawful" conduct without defining it. Accordingly, we held that the aggressor instruction was vague and overbroad.[1]

Likewise, the aggressor instruction in the case sub judice fails to define the phrase "unlawful act". There was conflicting testimony whether Hardy or Peek made the first advance prior to the fight. Hence, we do not know whether the jury found that Hardy made the initial advance, or concluded that, although Peek made the initial advance, Hardy acted "unlawfully" in calling Peek a "whore", therefore precluding her from asserting self–defense. Since calling a person a whore is not an unlawful act, there is an undeniable possibility that the jury, by treating the name-calling as an unlawful act, improperly denied Hardy her claim of self–defense. As in *Arthur,* therefore, the jury was given no guidance as to what actions could be considered "unlawful" under the aggressor instruction. As a result, the instruction was too vague and thus violative of due process.

---

[1] A recent Washington Supreme Court opinion distinguishes *State v. Arthur,* 42 Wn. App. 120, 708 P.2d 1230 (1985), on the ground that the defendant's conduct in that case was intentional rather than accidental. *State v. Hughes,* 106 Wn.2d 176, 721 P.2d 902 (1986). While the Supreme Court correctly discerned one of our concerns in *Arthur,* to conclude that *Arthur* was decided solely on that basis would be to interpret the case too narrowly. Moreover, we are convinced by a careful reading of the court's opinion that the aggressor instruction was upheld in *Hughes* because there was no possibility that the defendant was improperly denied a self–defense theory since the evidence of unlawful conduct was so clear (shooting at two policemen).

Accordingly, the case is reversed and remanded for a new trial.

WILLIAMS and RINGOLD, JJ., concur.

Review denied by Supreme Court October 29, 1986.