[No. 37566-4-II.   Division Two.   August 4, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES MICHAEL MAROHL, *Appellant*.

470

*Thomas E. Doyle*, for appellant.

*Gary P. Burleson, Prosecuting Attorney*, and *Edward P. Lombardo, Deputy*, for respondent.

¶1 BRIDGEWATER, J. — James Michael Marohl appeals his Mason County Superior Court conviction for third degree assault. We hold that sufficient evidence supported that Marohl assaulted Joseph Rex Peterson and that Marohl used the floor as an instrument to commit the assault. We affirm.

## FACTS

¶2 On June 27, 2007, Joseph Rex Peterson went to Little Creek Casino near Shelton, Washington, where he proceeded to drink with several friends and eventually became intoxicated. Peterson left his table and approached the bar to get a glass of water. One of Peterson's friends walked behind him and either tapped him on the back or pulled on his belt. Peterson turned around and, in the process of doing so, knocked over a chair before walking to the opposite end of the bar to talk to the friend who had attempted to gain his attention.

¶3 When Peterson walked back down to the other end of the bar, Sean McFadden stopped Peterson and told him to be more careful because Peterson had almost hit McFadden's wife when he knocked the chair over. Peterson placed his arm around McFadden and apologized. McFadden attempted to brush Peterson's arm away several times.

¶4 Marohl got up from McFadden's table and stepped between Peterson and McFadden. Peterson does not recall what happened next. Peterson suffered scrapes and bruises to the side of his face and eye and his prosthetic arm wasbroken off at the elbow joint.

¶5 The casino's security video recorded the incident. Tribal officers detained Marohl until Mason County deputies arrived and, after watching the video, arrested Marohl.

¶6 The State charged Marohl with second degree assault or in the alternative, third degree assault. At Marohl's jury trial, multiple witnesses testified regarding both their personal recollections and what they observed on the video. There was much conflicting testimony at trial.

¶7 Peterson's employer, Jesse Kollman, testified that after Marohl stepped between McFadden and Peterson, Marohl placed his arm around Peterson's throat and that Peterson was waiving his arms in the air in an attempt to get away from Marohl. Marohl then "drove [Peterson] into the ground." 1 Report of Proceedings (RP) at 78. Kollman further testified that when Peterson lost consciousness, "[Marohl] rode him into the floor." 1 RP at 79. Marohl is a mixed martial arts fighter, and much of the expert testimony presented by both sides involved evaluating the chokehold that Marohl placed on Peterson and whether he used it to choke him unconscious or to restrain him.

¶8 Neither party objected to the jury instructions. The jury returned verdicts of not guilty for second degree assault and guilty for third degree assault. The trial court sentenced Marohl within the standard range.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

¶9 Marohl contends that insufficient evidence supported that he caused bodily harm to Peterson by means of a weapon or other instrument or thing. We disagree.

¶10 In assessing the sufficiency of the evidence, we view the evidence in the light most favorable to the State and decide whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Mines*, 163 Wn.2d 387, 391, 179 P.3d 835 (2008). Marohl's sufficiency challenge admits the truth of the

State's evidence. *Mines*, 163 Wn.2d at 391. We do not review credibility determinations on appeal, and we leave issues regarding conflicting witness testimony and the persuasiveness of the evidence to the trier of fact. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

¶11 The State charged Marohl as follows:

> [Marohl] did commit ASSAULT IN THE THIRD DEGREE, a Class C Felony, in that said defendant, with criminal negligence, did cause bodily harm to another person, to wit: Joseph Peterson, by means of a weapon or other instrument or thing likely to produce bodily harm, contrary to RCW 9A.36.031(1)(d).

Clerk's Papers (CP) at 55. RCW 9A.36.031 provides:

> (1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
>
>     . . . .
>
> (d) With criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm.[1]

¶12 The to-convict jury instruction required the State to prove beyond a reasonable doubt:

> (1) That on or about the 27th day of June, 2007, the defendant caused bodily harm to Joseph Peterson;
>
> (2) That the physical injury was caused by a weapon or other instrument or thing likely to produce bodily harm;
>
> (3) That the defendant acted with criminal negligence; and
>
> (4) That the acts occurred in the State of Washington.

CP at 48.

¶13 During closing argument, the State argued to the jury that if the jury was unable to find Marohl guilty of second degree assault, it could certainly do so for third degree assault.

---

[1] In July 2007, one month after the incident here, the legislature amended RCW 9A.36.021, the second degree assault statute, to include assault by strangulation. *See* LAWS OF 2007, ch. 79, §§ 1, 2.

> With regard to the assault in the third degree, it's much shorter and sweeter. . . . It is with criminal negligence by means of an instrument or thing likely to produce bodily harm, producing bodily harm. . . .

> The instrument or thing here, obviously, is a combination of the arm lock, the choke lock, and taking him into the ground and slamming him into the floor. There's no requirement that—it's a broad thing. Instrument or thing. That's all in your—within your [province] to decide those are the instruments or things. There isn't a limited number of things in the law by which an assault third can be committed and no other. It's a very broad definition. Any instrument or thing. So, whether it was kick him with a boot, which isn't here, or any other matter you can think of, you simply take the facts that you have and say, what instrument or thing did he use with criminal negligence to inflict this harm.

4 RP at 448-49.

¶14 Marohl asserts that contrary to the State's assertions during closing argument, the combination of the arm lock and choke lock do not constitute a "weapon or other instrument or thing" under RCW 9A.36.031(1)(d). Br. of Appellant at 7-8. Marohl cites *State v. Cohen*, 143 Wash. 464, 474-75, 255 P. 910 (1927), for the proposition that an assault with a bare hand or fist would not satisfy a statute requiring a weapon or instrument likely to produce bodily harm. Br. of Appellant at 8-9. Instead, the *Cohen* court noted that assault with a bare hand would satisfy a statute not requiring a weapon. *Cohen*, 143 Wash. at 474-75.

¶15 Marohl further argues that the legislature's addition of the term " 'thing' " does not allow consideration of a bare hand or arm as a " 'weapon or other instrument or thing,' " citing a dictionary definition of " 'thing' " as an " 'entity' " or " 'inanimate object.' " Br. of Appellant at 9-10. Thus, to convict Marohl of third degree assault, the State had to prove that Marohl assaulted Peterson with something other than his bare hand or arm.

¶16 The State responds that sufficient evidence existed to prove that Marohl "slammed him face-down into a

barroom floor, cutting and bruising his face and breaking his prosthetic arm." Br. of Resp't at 3. While this is an exaggeration of what the testimony actually revealed, evidence did exist to establish that Marohl forced Peterson to the ground and the impact with the ground clearly broke Peterson's prosthetic arm and caused the abrasions and bruises to his face.

¶17 Peterson's boss, Jesse Kollman, testified regarding Peterson's contact with the floor:

> Q. Okay. Could--do you recall being able to tell whether or not Mr. Peterson dropped for lack of being conscious or whether the defendant physically took him there?
>
> A. I would say both. I mean, it was--he was--it wasn't that--I mean, when somebody come [sic] unconscious they fall down, they collapse. I mean, he was driven, you know, so it was like he rode him--once he lost consciousness he rode him into the floor.

1 RP at 78-79.

¶18 Kollman testified that Peterson was "pretty roughed up" with the "sides of his face . . . all skinned up" and that Peterson's prosthetic arm "was busted off right above the elbow joint." 1 RP at 80. Peterson testified as to how he felt when his memory started to return to him. He testified, "[his] arm hurt real bad because [he] had landed on [his] prosthetic arm and it jammed [his] shoulder into [his] body." 1 RP at 100. He added that "[his] face hit the ground and [his] whole—[his] jaw got real tweaked out of line and [he] had a real bad headache and [his] face was all scraped up." 1 RP at 100. Thus, we hold that a floor can be an "instrument or thing likely to produce bodily harm." Accordingly, sufficient evidence existed that Marohl, by means of a thing, the floor, caused Peterson physical injury.

## II. JURY INSTRUCTIONS

¶19 Marohl next contends that the trial court erred by failing to instruct the jury, sua sponte, that a bare hand or arm is not " 'a weapon or other instrument or thing' " for

purposes of third degree assault. Br. of Appellant at 11-12. A criminal defendant has the right to have a jury base its decision on an accurate statement of the law applied to the facts in his case. *State v. Miller*, 131 Wn.2d 78, 90-91, 929 P.2d 372 (1997).

¶20 The State counters that the trial court was not required, nor asked, to instruct the jury regarding bare hands or arms. The State contends that because the floor constitutes a " 'thing' " as it relates to third degree assault and undisputed evidence exists that Peterson's collision with the floor caused his injuries, the instruction would not be necessary. Br. of Resp't at 6, 7. Without Marohl riding or driving Peterson to the floor, Peterson would not have suffered the lacerations and bruising to his face and his broken prosthesis. We agree.

¶21 Marohl cites *State v. Tyler*, 47 Wn. App. 648, 653, 736 P.2d 1090 (1987), *overruled by State v. Delcambre*, 116 Wn.2d 444, 450, 805 P.2d 233 (1991), for the proposition that "[i]n certain circumstances, it is the trial court's duty to act of its own accord to protect a criminal defendant's due process right to a fair trial by a jury that is properly informed of the governing law." Br. of Appellant at 11. *Tyler*, however, does not support this proposition.

¶22 In *Tyler*, the to-convict instruction for first degree theft specifically required the jury to find that the defendant's act or omission was done with *intent to deprive* or defraud the State of Washington. *Tyler*, 47 Wn. App. at 651. Neither party requested that the trial court define " 'intent.' " *Tyler*, 47 Wn. App. at 650. The jury in *Tyler* twice asked the trial court to provide clarification as to the definition of intent while they deliberated, but the trial court refused. *Tyler*, 47 Wn. App. at 653. On appeal, the *Tyler* court determined, based on *State v. Sass*, 94 Wn.2d 721, 724, 620 P.2d 79 (1980), that intent to deprive applied to welfare fraud. *Tyler*, 47 Wn. App. at 651.

¶23 Having determined that intent was an element of the charged crime, the *Tyler* court considered whether the error was harmless. *Tyler*, 47 Wn. App. at 653. The lan-

guage that Marohl cites in support of his proposition that the trial court had an independent duty to instruct the jury regarding bare hands and arms appears in this harmless error discussion. *Tyler*, 47 Wn. App. at 653.

> Even if originally no request was made when the questions were submitted to the court by the jury, due process and a fair trial would require the court, sua sponte, to resolve the jury's confusion. The error could not be held harmless.

*Tyler*, 47 Wn. App. at 653. Despite Marohl's claim, *Tyler* at most stands for the proposition that the trial court should have provided the jury with some guidance when they twice asked for clarification. *Tyler*, 47 Wn. App. at 653.

¶24 Instructions are proper if, when read as a whole, they are readily understood, not misleading to the ordinary mind, and sufficiently clear and, when given, allow counsel to satisfactorily argue his case theory to the jury. *State v. Hardy*, 44 Wn. App. 477, 480-81, 722 P.2d 872, *review denied*, 107 Wn.2d 1009 (1986). As long as the jury instructions inform the jury of all the elements of the crime charged, there is no constitutional error. *State v. Scott*, 110 Wn.2d 682, 690, 757 P.2d 492 (1988). A trial court is not required to instruct a jury in a more detailed fashion in the absence of a request to do so. *State v. Mayner*, 4 Wn. App. 549, 552, 483 P.2d 151, *review denied*, 79 Wn.2d 1008 (1971).

¶25 Marohl's case theory was that Peterson was an obnoxious drunk and he was merely restraining Peterson from harming McFadden. He was able to argue this theory to the jury. Marohl does not contest that the jury instructions informed the jury of all of the elements. Marohl has failed to establish a sua sponte duty for the trial court to instruct the jury regarding bare arms or hands. There is no evidence here that the jury was confused regarding the instructions the trial court provided. They certainly did not ask the trial court to clarify any of the instructions. Marohl's argument lacks merit.

## III. Effective Assistance of Counsel

¶26 Marohl argues that his counsel provided ineffective assistance when he failed to object to the trial court's failure to instruct the jury that bare hands and arms do not constitute " 'a weapon or other instrument or thing' " for purposes of proving third degree assault. Br. of Appellant at 16. In a similar claim, Marohl contends that his counsel provided ineffective assistance by failing to propose such an instruction on his own.

¶27 To prevail on an ineffective assistance of counsel claim, Marohl must show that (1) defense counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Marohl must make both showings to prevail on his ineffective assistance claim. *Thomas*, 109 Wn.2d at 226 (quoting *Strickland*, 466 U.S. at 687). For the first prong, scrutiny of counsel's performance is highly deferential and there is a strong presumption of reasonableness. *Thomas*, 109 Wn.2d at 226. If defense counsel's conduct can be characterized as trial strategy or tactics, it does not constitute deficient performance. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). The second prong requires Marohl to show that there is a reasonable probability that the trial outcome would have differed absent counsel's deficient performance. *Hendrickson*, 129 Wn.2d at 78 (citing *Thomas*, 109 Wn.2d at 226).

¶28 We hold that Marohl's counsel provided effective assistance because no instruction was necessary. Two reasons support our conclusion that no instruction was necessary—(1) our analysis above shows that an instruction was not justified by the evidence and (2) the trial court is not required to give negative instructions as to matters that will not support a conviction in a criminal case. *State v. Montague*, 10 Wn. App. 911, 917, 521 P.2d 64, *review denied*,

84 Wn.2d 1004 (1974). "It is unnecessary to explain those things which will *not* constitute a crime, though a court may do so in the interest of clarity." *Montague*, 10 Wn. App. at 917. Marohl's ineffective assistance claim fails.

¶29  Affirmed.

VAN DEREN, C.J., and PENOYAR, J., concur.

Review granted at 167 Wn.2d 1020 (2010).