# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

2017 JAN 23 AM 8: 47

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 73921-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DAVID MOORE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 23, 2017 |

SPEARMAN, J. — Evidence is sufficient to support a criminal conviction where a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. David Moore challenges the sufficiency of the evidence supporting his conviction for assault in the fourth degree. He specifically asserts that the State failed to disprove his claim of self-defense. But because the evidence in the record is sufficient for a reasonable fact finder to find the elements of the crime beyond a reasonable doubt, we affirm.

## FACTS

Early one Sunday morning, Moore was sitting in an entrance to the Metro transit tunnel smoking a cigarette. Jessica Branson, a Metro security guard, informed Moore that smoking is prohibited on Metro property. In the ensuing altercation, Moore struck Branson twice. Branson suffered an injury that required

several stitches. The incident was recorded by surveillance video. Moore was charged with second degree assault.

At trial, Branson and Moore each recounted the incident. According to Branson, she noticed Moore from about 20 feet away and called to him to take his cigarette outside. She continued on her rounds but stopped as she passed a few feet from Moore because he had not complied with her request. Branson advised Moore that the tunnel is a non-smoking area. Moore flicked his cigarette onto the floor.

Branson objected to the action as littering and told Moore to pick up the cigarette. Moore replied "make me." Verbatim Report of Proceedings (VRP) (7/16/15) at 64. Branson advised him that he had to comply with Metro policies or leave the tunnel. As Branson was advising him about Metro policies, Moore continued talking. Branson could not understand what he was saying so she moved closer to Moore and faced him. Moore calmly said he was going to "knock [Branson] out." Id. at 66. Branson did not take him seriously, but she called her supervisor, reported the threat, and asked for assistance.

Moore raised his phone to take Branson's photo. According to Branson, she raised her hand so that it was in front of the phone's camera but not touching the phone or any part of Moore's body. In one fluid motion, Moore stood and hit Branson in the face. Branson swung around and stumbled in a daze. Id. When she looked up, Moore was approaching her with his fist raised. Branson backed away to the far end of the tunnel entrance. Moore moved with her and struck her again, this time causing her to fall. As Branson was getting up, she saw that

2

blood was pooling on the floor. She realized that the first blow had split her lip and she was bleeding profusely. She again called for assistance and other security officers soon arrived.

Moore argued that he acted in self-defense. According to Moore, he suffers from numerous old injuries, including a gunshot wound to his head and a crushed leg. He keeps a distance from people to avoid painful contact with these old injuries. Moore stated that a bullet remains lodged in his head and contact with his head could be fatal.

Moore testified that he was sitting peacefully in the tunnel when Branson yelled at him to put out his cigarette. He complied immediately but Branson continued to yell at him and stood so close that he could feel her spit. Moore told Branson that he was going to report her and held up his phone to take her picture. Branson moved even closer and touched his injured leg with her knee. When he tried to take her picture again, Branson grabbed Moore's phone. Moore testified that he begged Branson not to touch his head but she ignored his pleas and shoved the phone into his forehead.

Moore stated that when he saw Branson was going to touch his head he knew the motion could kill him. He was in fear for his life and automatically stopped Branson by striking her. Moore testified that he followed Branson across the entrance and struck her a second time because he did not know what she was capable of doing.

On cross examination, Moore was unable to identify on the surveillance video a point at which Branson touched him with her knee. He stated that, even if

3

there was no contact, she got too close to his injured leg. Moore disowned a signed statement in which he stated that Branson kneed him in the ribs. He stated that he did not leave before the incident escalated because Branson had already called her supervisor and transit security could invent a reason to arrest him.

The court instructed the jury in the charge of assault in the second degree and the lesser included offense of assault in the fourth degree. The court also instructed the jury that the State had the burden of disproving Moore's claim of self-defense.

In closing, the State argued that Moore did not reasonably believe that he was about to be injured because the evidence established that Branson never touched him. The State further argued that, even if Moore subjectively believed that Branson was about to assault him, he had options other than force available to him. And even if Moore reasonably believed that force was his only option in the first instance, it was not reasonable for him to hit Branson a second time after she backed away from him.

Moore argued in closing that he struck Branson after she slammed the phone into his head. He argued that he reasonably believed he was about to be injured and reacted accordingly. As to the second blow, Moore argued that even if the jury did not believe he struck that blow in self-defense, it did not constitute second-degree assault because it did not result in injury.

The jury convicted Moore of assault in the fourth degree. He appeals.

4

## DISCUSSION

Moore argues that the State failed to present sufficient evidence to disprove his claim of self-defense. In reviewing whether sufficient evidence supports a criminal conviction, we review the evidence in the light most favorable to the State. State v. Drum, 168 Wn.2d 23, 34, 225 P.3d 237 (2010) (citing State v. Wentz, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). We defer to the fact finder on issues of credibility. Id. (citing State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). The question is whether, viewing the evidence in that light, "'any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

Where a defendant properly raises a claim of self-defense, the State has the burden to prove the absence of self-defense beyond a reasonable doubt. State v. Walden, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997) (citing State v. Janes, 121 Wn.2d 220, 237, 850 P.2d 495 (1993)). Evidence of self-defense is evaluated under both a subjective and an objective prong. Id. at 474. Under the subjective prong, the jury considers the apparent threat from the defendant's point of view. Id. Under the objective prong, the jury considers what "a reasonably prudent person similarly situated would have done." Id. Self-defense justifies only the degree of force that "a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." Id. (citing State v. Bailey, 22 Wn. App. 646, 650, 591 P.2d 1212 (1979)).

Moore contends the State failed to disprove self-defense because his testimony established that he believed Branson was about to assault him, satisfying the subjective prong. And, he asserts, the record gives evidence that he used only the degree of force that a reasonably prudent person in his circumstances would have used.

We disagree. The record contains conflicting evidence as to the first blow. But viewed in the light most favorable to the State, a rational juror could conclude that Moore used more force than reasonably necessary in striking a first blow that inflicted an injury requiring several stitches. And even if we were to conclude otherwise as to the first blow, we would reach the same result because Moore struck Branson a second time. The evidence is undisputed that the second blow occurred after Branson backed some distance away from him. Even in his own testimony, Moore does not suggest that he perceived an imminent threat of harm from Branson at that time. Thus, the evidence amply supports the jury's determination that Moore was not acting in self-defense when he struck the second blow.

Moore raises three further challenges in a statement of additional grounds (SAG). He first asserts that he was sitting peacefully in the tunnel entrance until Branson disturbed him. The record supports this assertion. But we reject Moore's argument as irrelevant because his behavior prior to Branson's arrival has no bearing on whether his use of force was justified.

Moore next appears to assert that Branson's employer is targeting him by using the surveillance video in training. The record supports the assertion that

6

the company uses the video in training. But as this argument is also irrelevant to Moore's conviction, we reject it.

Finally, Moore contends that he received ineffective assistance of counsel. Ineffective assistance of counsel requires proof that counsel's performance was deficient and resulted in prejudice. State v. Humphries, 181 Wn.2d 708, 719-720, 336 P.3d 1121 (2014) (citing Strickland v. Washington, 466 U.S. 448, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Moore asserts that counsel made racist comments and attempted a "falsified representation." SAG at 2. Because we have found nothing in the record to support these claims, we reject them.

Affirmed.

_Spearman, J._

WE CONCUR:

_Dwyer, J._          _Becker, J._

7