# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 69841-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | ORDER GRANTING MOTION |
| MICHAEL KEITH JUSTICE, | ) | FOR RECONSIDERATION IN PART |
| | ) | AND WITHDRAWING OPINION |
| Appellant. | ) | |

Appellant Michael Justice has filed a motion for reconsideration of the opinion filed in the above matter on April 4, 2016. A majority of the panel has determined this motion should be granted in part.

Now, therefore, it is hereby

ORDERED that the appellant's motion for reconsideration of the opinion is granted in part. The case is remanded to correct the offender score on Count 1 and for resentencing on Count 2.

IT IS FURTHER ORDERED that the opinion filed on April 4, 2014 be withdrawn and is replaced with the new opinion.

DATED this 23rd day of May 2016.

FOR THE COURT:

_____
Presiding Judge



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 69841-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL KEITH JUSTICE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 23, 2016 |

SPEARMAN, J. — Michael Justice and Edward Roy exchanged gun shots on a busy street. Justice was convicted of unlawful possession of a firearm and assault in the first degree. The trial court instructed the jury in self-defense and also instructed the jury that self-defense is not available when the defendant's own conduct created the necessity to act in self-defense.

Justice appeals, arguing that the trial court erred in giving the first aggressor instruction. Because the record included conflicting evidence as to whether Justice's conduct provoked the fight, the aggressor instruction was properly given. We affirm. However, the trial court erroneously included an out-of-state conviction in Justice's offender score. The error does not require resentencing, but we remand for correction of the error.

<u>FACTS</u>

On a summer day in 2012, Justice and his wife Shaquina had breakfast at Geraldine's, a popular restaurant in Columbia City.[1] After breakfast, they returned to their car and began to exit the parking lot. As Justice was pulling out, he saw Roy drive into the lot.

Justice and Roy had known each other most of their lives. When Justice saw Roy he stopped his car, got out, and approached Roy's driver's side window. Justice had recently learned that Roy was angry with him, and he approached Roy to try to resolve the problem. According to Justice, Roy responded by pulling a gun and telling Justice that he would kill him. Roy got out of his SUV and the two men talked for a moment. Roy then got back into his truck and parked. Roy walked across the street and down the block toward Geraldine's, away from Justice. When Roy walked away, Justice returned to his car and took the gun Shaquina kept in her purse. Justice walked out of the parking lot in the same direction Roy had gone.

Several witnesses testified to the subsequent events. Peter Lamb, the owner of the parking lot, testified that he saw Justice standing on the sidewalk across from the lot. Justice was shouting at Roy, who was further down the street, to "get up here." Verbatim Report of Proceedings (VRP(12/04/12) at 402-03. Justice crossed to the parking lot side of the street and continued yelling. Lamb saw Roy walking up the street with his hands by his side. A few seconds

---

[1] Because Michael and Shaquina Justice share the same last name, we refer to Ms. Justice by her first name.

later Lamb saw Justice pull a gun and start shooting in Roy's direction. Lamb stated that Justice fired first. He stated that Justice fired two or three shots from his original position and then ran into the alley.

Michael Parham and Naomi Ishisaka were sitting at an outdoor table. Parham heard loud offensive language. Parham looked around and saw Justice on the sidewalk yelling at Roy, who was at the other end of the block. Parham heard Justice say "'[b]itch ass nigger'" and saw him walk toward the middle of the street. VRP (12/05/12) at 794. Justice had his hand near his hip. Parham and Ishisaka got up from their table and went inside. As soon as they got into the restaurant, Parham looked outside and saw Justice "brandishing a gun." VRP (12/05/12) at 798.

Ishisaka heard Justice shout "bitch ass nigger" several times in a "loud angry" tone. VRP (12/05/12) at 826-27. Justice paced back and forth while he yelled. Ishisaka saw Roy "just sort of standing there" outside of Geraldine's looking back at Justice. VRP (12/05/12) at 825, 828-29. Ishisaka stated that Justice reached toward his waistband, as though indicating he was armed. Roy imitated the gesture. Ishisaka became very nervous and she and Parham went into the restaurant. A moment after she entered the restaurant she heard gunshots.

Roy testified that as he walked away from the confrontation in the parking lot, he became aware that Justice had followed him into the street and was yelling at him. Roy walked to Geraldine's where his girlfriend, Elissa Rosenberg, was waiting. Roy and Rosenberg decided to leave rather than wait for a table. As

3

they crossed the street to walk back to their cars, Justice also crossed the street, remaining parallel to them. Roy said that Justice was "throwing some type of hand signs up," possibly signaling him to approach. VRP (12/10/12) at 1105. Roy stated that Justice pulled his gun and fired one or two shots at him before Roy shot back. Roy fired two or three shots and Justice ran north up an alley. From the alley, Justice turned and fired further shots at Roy.

Rosenberg testified that, while she and Roy stood outside Geraldine's, she saw Justice gesturing at Roy and said it "didn't look like nice gestures." VRP (12/10/12) at 1020-21. When she and Roy crossed the street to walk toward their cars, Justice also crossed the street. Rosenberg saw Justice lift up his shirt and show his gun. When she saw Justice's gun, Rosenberg slowed and lagged four or five feet behind Roy. Roy walked a little bit further. Rosenberg could not see if Roy made any gestures at Justice. A moment later, Rosenberg heard a shot and felt a bullet pass close to her. She did not see a gun in Roy's hand.

John Hays was standing on the sidewalk opposite Geraldine's, close to Roy and Rosenberg. Hays testified that he heard Justice yelling down the street. He noticed Roy and Rosenberg cross the street. Hays stated that Roy pulled up his T-shirt "like he wanted to display something." VRP (12/13/12) at 1676. Hays saw what appeared to be the butt of a gun in Roy's waistband. Hays was watching Roy and Rosenberg and could not say what Justice was doing.

Justice testified that, after the parking lot confrontation, he told Shaquina to leave. He followed after Roy to beg for his life. He stated that he was afraid for his own safety and for his wife. He paced back and forth in the street to keep

Roy's attention on him rather than Shaquina. He called to Roy to "come here" and then started yelling "you bitch ass nigger, [yo]u's a sucker." VRP (12/13/12) at 1785. Justice saw Roy begin walking toward him. Justice stated that he reached for his gun to keep it from falling.

According to Justice, when Shaquina drove by, Roy said "Better get in that car, boy" and patted his gun. VRP (12/13/12) at 1794-95. Justice said "'Don't do that,'" but Roy lifted up his shirt to get his gun and said "too late now." VRP (12/13/12) at 1794-96. At that point, Justice said that "[his] body took over" and he pulled his gun. VRP (12/13/12) at 1796. Justice admitted that he drew his gun first and fired the first shot. Justice said that he did not want to hurt Roy and he fired into the grass. He stated that he only fired one shot. On cross examination, Justice admitted that he fired further shots from the alley.

As Justice was running out of the alley, he saw Shaquina driving nearby. Justice got in the car and they drove away. Roy returned to his SUV and also drove away.

Police arrived within a few minutes of the incident. Officers recovered eleven spent shell casings and one unspent round. Lamb, the owner of the parking lot, gave police the video recordings from his four surveillance cameras. The State charged Justice with unlawful possession of a firearm and first degree assault with a deadly weapon. The surveillance video was played for the jury at trial and witnesses described the events portrayed on the video.

At trial, Justice asserted self-defense as to the assault charge and necessity as to the firearms charge. The State proposed the pattern aggressor instruction which states:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense or defense of another and thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense or defense of another is not available as a defense.

CP at 408.

Justice objected that the instruction was applicable only to homicide and was "not a standard assault instruction." VRP (12/12/12) at 1646. The trial court found that the instruction was "appropriate under the different set of facts that we've got and the testimony in this case." Id. The State did not specify which conduct it was relying on to justify the aggressor instruction. The court gave the necessity, self-defense, and aggressor instructions.

In closing arguments, the State summarized the instructions and the charges. Referring to the self-defense and the aggressor instructions, the State argued that Justice could not claim self-defense "because he is the one who created the situation that everyone on that street was subjected to when he decided to fire his gun." VRP (12/17/12) at 2015. Justice did not object to this argument.

Justice argued in closing that he armed himself out of necessity, fired in self-defense, and did not intend to harm Roy. Justice argued that Roy took his

gun out and loaded it before Justice drew his gun. He asserted that the video shows Roy step into shadows where he is obscured from view and remain there just long enough to load a gun.

The jury found Justice guilty of unlawful possession of a firearm and first degree assault. Justice appeals.

DISCUSSION

Justice raises several challenges to the aggressor instruction. He first argues that it was error for the trial court to give the instruction because Justice's only aggressive act was the assault itself.[2] Alternatively, Justice argues that it was error for the court to give the instruction without instructing the jury that words alone are not sufficient to qualify one as an aggressor.

Each side is entitled to have the jury instructed on its theory of the case where there is evidence to support that theory. State v. Riley, 137 Wn.2d 904, 909 n.1, 976 P.2d 624 (1999) (citing State v. Williams, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997)). We review a trial court's decision to give a jury instruction for abuse of discretion if the decision was based on a determination of fact. State v. Condon, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015) (citing State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998)). If the decision was based on a legal conclusion, we review de novo. Id.

---

[2] Justice argues that the trial court erred in giving the instruction because the prosecutor relied on the first shot as both the provocation and the assault. This argument conflates two separate issues: whether the trial court erred in giving an instruction not supported by the evidence, and whether the prosecutor committed misconduct by misstating the law. We address the issues separately.

Justice and the State appear to agree that the appropriate standard of review is de novo. Both rely on State v. Bea, 162 Wn. App. 570, 577, 254 P.3d 433 (2010), which states that because the trial court's decision to give an aggressor instruction is based on a conclusion of law appellate review is de novo. Id. at 577 (citing State v. Stark, 158 Wn. App. 952, 959, 244 P.3d 433 (2010). See also State v. Anderson, 144 Wn. App. 85, 89, 180 P.3d 885 (2008). The Bea line of cases appears to conflict with Kappelman v. Lutz, 167 Wn.2d 1, 6, 217 P.3d 286 (2009), in which the Supreme Court held that, where the decision to give a jury instruction depends on whether the evidence supports the instruction, review is for abuse of discretion. But we need not resolve the conflict here. Under either standard of review, the decision to give an aggressor instruction in this case was not error.

To justify an aggressor instruction, there must be evidence that the defendant engaged in intentional conduct that was reasonably likely to provoke a belligerent response. State v. Wasson, 54 Wn. App. 156, 159, 772 P.2d 1039 (1989) (citing State v. Arthur, 42 Wn. App. 120, 708 P.2d 1230 (1985)). The intentional conduct must be more than words alone. Riley, 137 Wn.2d at 913. An aggressor instruction is not proper where the only provoking act is the assault itself. Wasson, 54 Wn. App. at 159 (citing State v. Brower, 43 Wn. App. 893, 902, 721 P.2d 12 (1986)).

An aggressor instruction is proper (1) where there is credible evidence from which a jury could conclude that the defendant provoked the fight, (2) where the evidence conflicts as to whether the defendant's conduct provoked the fight,

or (3) where the evidence shows that the defendant was the first to draw a weapon. Riley, 137 Wn.2d at 909-910. We view the evidence in the light most favorable to the party that requested the instruction. State v. Wingate, 155 Wn.2d 817, 823 n.1, 122 P.3d 908 (2005) (citing State v. Fernandez-Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000)).

Here, there is conflicting evidence whether the conduct of Justice or Roy provoked the gun fight. Justice admitted that he drew his weapon first and fired first, but stated that he did so because Roy had indicated he was about to shoot. Justice stated that he reached for his gun only after Roy gestured to indicate he was armed and flashed his gun. But Ishisaka stated that Justice gestured to indicate he was armed before Roy made a similar gesture. Hays saw Roy flash his gun, but he was not watching Justice and could not say what he was doing at that moment. When Rosenberg saw Justice flash his gun, she did not see a gun in Roy's hand.

The record also includes conflicting evidence regarding the first shot. Justice argues that he fired only once into the ground, and he made no other intentional act that was likely to provoke a belligerent response. But Roy stated that Justice fired at him once or twice before he returned fire. Rosenberg stated that she felt the bullet from the first shot pass close to her where she stood a few feet behind Roy, which suggests that the first shot was fired at Roy. Lamb stated that Justice fired at Roy two or three times before Roy fired back.

Justice argues this evidence is insufficient to warrant an aggressor instruction. We disagree. The question before us is whether the record included

9

"some evidence" that the defendant's conduct provoked the fight. Anderson, 144 Wn. App. at 89-90. Here there was, at minimum, conflicting evidence as to who first indicated he was armed and who first displayed a weapon. There was also conflicting evidence as to whether Justice's first shot was fired at Roy or was fired into the ground. Whether reviewed de novo or for abuse of discretion, it was not error to instruct the jury that self-defense was not available if Justice's own conduct created the necessity to act in self-defense.[3]

Justice next asserts that it was error to give the aggressor instruction without instructing the jury that words alone are not sufficient to defeat a claim of self-defense. Because Justice did not object to the wording of the instruction below, he can raise the issue on appeal only if it is manifest constitutional error. RAP 2.5(a)(3). A "manifest" error is one that is "obvious on the record" and that "actually affected the [appellant]'s rights at trial." State v. O'Hara, 167 Wn.2d 91, 98–100, 217 P.3d 756 (2009) (quoting State v. Kirkman, 159 Wn.2d 918, 926–27, 155 P.3d 125 (2007)). An erroneous aggressor instruction impacts a defendant's claim of self-defense and therefore his constitutional right to present a defense. Riley, 137 Wn.2d at 910 n.2. Here, however, there was no manifest error because the language of the instruction was proper.

---

[3] At oral argument, Justice asserted that the testimony that he was the first to gesture towards his gun was insufficient because it was not credible. But under Riley, the fact that the evidence was conflicting on this point is a proper ground for giving the instruction. Ultimately, the credibility given to the testimony is for the jury to decide. State v. Carver, 113 Wn.2d 591, 605, 781 P.2d 1308 (1989). Justice also asserts that the video shows that his demeanor on the street was calm, not aggressive and the video shows him touching the bottom of his shirt, not gesturing towards his waistband to indicate he had a gun. Again, weighing this evidence is the province of the jury and we will not second guess its determination on appeal.

Our Supreme Court has already determined that the pattern aggressor instruction is a proper statement of the law. Riley, 137 Wn.2d at 914; Wingate, 155 Wn.2d at 821. The Riley court also rejected the argument that the instruction could lead the jury to rely on a defendant's words alone to find that he provoked the violence. Riley, 137 Wn.2d at 913-14. The instruction specifically directs jurors to consider the defendant's acts and conduct, not his speech.[4] Id. It was not error to give the instruction without additional language explaining that the jury could not rely on Justice's words alone to conclude that he was the aggressor.

Justice also contends that his counsel was ineffective because he failed to request that the court include additional language in the aggressor instruction advising the jury that words alone are insufficient provocation to defeat a claim of self-defense. Defense counsel is ineffective where counsel's performance was deficient and the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Here, the language of the aggressor instruction was not error because it properly advised the jury that only evidence of the defendant's acts and conduct were a basis for finding that he was the aggressor. Accordingly, defense counsel's failure to seek additional language to that effect was not deficient.

---

[4] "No person may, by any intentional act...create a necessity for acting in self-defense ... [If] defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04, at 41 (3d. ed. 2008). (Emphasis added).

Next, Justice argues that the allegedly erroneous aggressor instruction defeated his defense that he possessed the gun out of necessity. He contends that this is reversible error. We reject this argument because, first, the aggressor instruction was not erroneous and, second, an aggressor instruction does not preclude a claim of necessity. When the trial court instructs on more than one theory, "[i]t is up to counsel to persuade the jury from the evidence in the case that his theory should be accepted . . . ." State v. Theroff, 95 Wn.2d 385, 389, 622 P.2d 1240 (1980).

To prevail in his necessity theory, Justice had to prove by preponderance of evidence that he needed the gun to avoid or minimize harm that he did not bring about and that he had no reasonable legal alternative to possessing the gun. Justice testified that he followed Roy to beg for his life and took the gun to protect himself. But the record also included evidence that Justice obtained the gun after Roy walked away and that Justice had numerous opportunities to leave the scene rather than follow Roy. Justice failed to persuade the jury to accept his theory of the case. There was no error.

Justice next argues that the prosecutor committed reversible misconduct by misstating the law concerning the first aggressor. To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was "'both improper and prejudicial.'" State v. Thorgerson, 172 Wn. 2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). Because Justice did not object to the allegedly improper statement at trial, he must show that it was so flagrant and prejudicial that it could

not have been cured by admonition to the jury. State v. Weber, 159 Wn.2d 252, 270, 149 P.3d 646 (2006) (citing State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997)).

Justice argues that the prosecutor misstated the law by urging the jury to rely on the same act, Justice's first shot, as both the provoking act and the assault. The assault itself cannot be the provoking act that justifies an aggressor instruction. State v. Kidd, 57 Wn. App. 95, 100, 786 P.2d 847 (1990) (citing Wasson, 54 Wn. App. at 159). Justice relies on one sentence from the prosecutor's closing argument. While summarizing the charges and the instructions, the prosecutor argued:

> Instruction number 20 – number 20 also pertains to any claim of self-defense as to the assault in the first degree, and I invite you to go over this instruction carefully as well, because it says if the defendant created a necessity, if he created the necessity for acting in self-defense or defense of another, then it's not self-defense. If he provoked the incident, then it's not self-defense. And that's what we have here. <u>Mr. Justice cannot claim self-defense here because he is the one who created the situation that everyone on that street was subjected to when he decided to fire his gun.</u>

VRP (12/17/16) at 2014-15. (Emphasis added).

The prosecutor's argument at least implies that the jury may consider the first shot a provoking act. But it does not encourage the jury to rely on the same shot as the assault. The statement thus does not misstate the law by arguing that the first shot was both the provocation and the assault.

The evidence provided a variety of bases for concluding that Justice was the aggressor and for concluding that he assaulted Roy. The jury could have

13

reasonably concluded that Justice was the aggressor based on his conduct between the parking lot and the shooting and that he assaulted Roy by firing at him at least once from the street and again from the alley. Alternatively, the jury could have concluded that Justice provoked the confrontation by firing the first shot into the ground and assaulted Roy by firing subsequent shots at him. If the prosecutor's statement caused any confusion as to which acts could constitute provocation and assault, this confusion could have been cured through timely objection and admonition to the jury. Justice's claim of prosecutorial misconduct is therefore unavailing.

In sum, none of Justice's arguments regarding the aggressor instruction have merit. The trial court did not err in giving an aggressor instruction because the instruction was supported by evidence. The language of the instruction has been approved by our Supreme Court and counsel was not ineffective in failing to request additional language. The instruction did not prevent Justice from arguing that he possessed the gun out of necessity. And the prosecutor did not commit reversible misconduct by misstating the law concerning the aggressor instruction.

Justice next argues that the trial court violated his right to present a defense by excluding the testimony of DeShawn Miliken. The right to present testimony in one's own defense is guaranteed by both the federal and the state constitution. State v. Hudlow, 99 Wn.2d 1, 15, 659 P.2d 514 (1983) (citing Washington v. Texas, 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). But a criminal defendant has no right to introduce irrelevant evidence. State v.

Lord, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007) (citing Hudlow, 99 Wn.2d at 15). Relevant evidence is that which has any tendency to make a material fact more or less probable. ER 401. We review a trial court's decision to exclude evidence for abuse of discretion. Lord, 161 Wn.2d at 294 (citing State v. Picard, 90 Wn. App. 890, 899, 954 P.2d 514 (1983)). The trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Id. at 283.

Justice planned to call Miliken to testify to a conversation he had with Roy in the weeks following the shooting. Miliken would have testified that he approached Roy to discuss the shooting, but Roy responded angrily and said "[D]on't make me do you like I almost killed your boy." CP at 124. The court excluded this testimony as irrelevant because the conversation occurred after the shooting and did not "tend to make anything more or less likely as to who did what" during the incident. VRP (12/12/12) at 1413-14.

The trial court did not abuse its discretion in refusing the testimony as irrelevant. The statement, which was allegedly made at least two weeks after the shooting, did not have any tendency to prove what happened on the day of the shooting. The conversation did not tend to make it more or less likely that Roy was the aggressor. And the alleged statement did not provide any new information, as it was undisputed that Roy fired at Justice and therefore did "almost kill" him.

Next, Justice argues that the trial court erred in conducting peremptory challenges on paper. This argument is foreclosed by our Supreme Court's recent

decision in State v. Love, 183 Wn.2d 598, 354 P.3d 841 (2015). In Love, counsel exercised peremptory challenges on paper by exchanging a list of jurors. Id. The public could "see counsel exercise challenges" as they exchanged the list and "the struck juror sheet showing the peremptory challenges" was part of the record. Id. at 607. The Love court held that the procedure did not violate the right to a public trial. Id.

The procedure for peremptory challenges in the present case was essentially the same as in Love. Counsel exchanged a written list of jurors and marked their challenges on the paper. The jury panel selection sheet was filed as part of the record. The courtroom remained open while counsel exercised their peremptory challenges. The procedure did not violate Justice's right to a public trial.

Finally, Justice contends that the trial court erred in including an Arizona conviction in his offender score and that the case must be remanded for resentencing. The State concedes that inclusion of the Arizona conviction was error, but argues that it is unnecessary to remand for resentencing because the error did not affect the standard range.

Where the defendant's offender score exceeds nine points, the sentencing court need not calculate the precise score unless considering an exceptional sentence. State v. Lillard, 122 Wn. App. 422, 432-33, 93 P.3d 969 (2004). Absent a showing of prejudice, remand to calculate the exact offender score is not necessary where the court imposes a standard range sentence based on an offender score of nine. Id. at 433. An error in calculating the offender score is

harmless where it does not affect the standard range. State v. Argo, 81 Wn. App. 552, 569, 915 P.2d 1103 (1996).

At sentencing, the State argued that Justice's offender score was 11. This total included an Arizona conviction for criminal possession of a forgery device and a Colorado theft conviction. Justice opposed the inclusion of the foreign convictions, but acknowledged that his standard range sentence was the same regardless of whether his offender score was 9, 10, or 11. The sentencing court stated that Justice's score was "at least a ten." VRP (02/01/13) at 2133. Concerning the out-of-state convictions, the court stated, "I don't think it's tremendously important to anyone here, given that it doesn't change the amount of time that you're going to serve, I do think the correct offender score based on my review...is an eleven here as opposed to a nine or ten." Id. at 2147. The court found no basis to impose an exceptional sentence and imposed a standard range sentence of 325 months.

Justice argues that, absent the Arizona conviction, the sentencing court may have imposed an exceptional sentence. We reject this argument because the sentencing judge stated that an offender score of nine or ten would not change the sentence. It is thus unnecessary to remand for resentencing based on an offender score of ten instead of eleven.

Justice also argues that even if this court does not remand for resentencing, it should remand to correct the offender score on the judgment. Justice relies on State v. Salinas, 169 Wn. App. 210, 225, 279 P.3d 917 (2012), in which this court remanded to amend the judgment and sentence although the

amendments would not affect the sentence. In that case, we noted that the amendments could become relevant in future proceedings. Id. We are of the same opinion here and we remand to correct the offender score on Count 1 of the judgment and sentence.[5]

<u>Statement of Additional Grounds</u>

In his statement of additional grounds, Justice asks this court to grant his RAP 9.11 motion to consider additional evidence. He also challenges the aggressor instruction, claims ineffective assistance of counsel and prosecutorial misconduct, and asserts that cumulative error requires reversal.

First, Justice argues that the State withheld exculpatory evidence and he asks this court to consider the excluded evidence here. Under RAP 9.11, this court may direct that additional evidence on the merits of the case be taken in limited circumstances. The court must determine that additional proof of facts is necessary to fairly resolve the issues on review, the additional evidence would probably change the decision being reviewed, and it would be inequitable to decide the case on the evidence already taken in the trial court. RAP 9.11(a).

Justice asks that this court consider the ballistics report, which became available about three weeks after Justice was convicted. Justice argues that the report is material evidence that would likely change the result of the trial because it tends to support his testimony that he fired only one shot from his original

---

[5] We accept the State's concession that the case should be remanded for resentencing on Count 2, the conviction for unlawful possession of a firearm.

position. Justice acknowledges that the report also confirms that he fired additional shots from the alley.

We decline to consider the additional evidence. The record includes evidence that Justice gestured to show he was armed and drew his weapon first. It includes evidence that he fired at least once from his original position and fired again from the alley. Even if the ballistics report tends to support Justice's statement that he fired only once from his original position, the evidence would not likely change the result of the decision being reviewed.

Justice also argues that the State withheld exculpatory evidence by not disclosing the ballistics report at trial. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed. 2d 215 (1963). To establish a Brady violation, Justice had to show that (1) the evidence was favorable to him, (2) the State suppressed the evidence, and (3) he was prejudiced by the suppression of evidence. State v. Mullen, 171 Wn.2d 881, 895, 259 P.3d 158 (2011) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). Even if the ballistics report tends to support Justice's statement that he fired only one shot from his original position, Justice has not shown that the State suppressed the report or that he was prejudiced because the report was not introduced at trial. Justice has not shown a Brady violation.

Justice also urges this court to reverse based on the allegedly erroneous aggressor instruction. In addition to arguing, as counsel did, that there was not sufficient evidence to support an aggressor instruction, he asserts that the

19

instruction was not appropriate in this case because of his past relationship with Roy.

Justice asserts that his history with Roy distinguishes his case from assault cases where an aggressor instruction was warranted. Justice contends that Roy was the first aggressor because he made death threats to Justice in phone conversations prior to July 2012 and conveyed threats to Justice's friends. Justice asks this court to depart from the bright line rule of Riley that violence may never be a lawful response to prior threatening words. He asks that we create a rule that trial courts must consider evidence of the context of the parties' relationship in determining if an aggressor instruction is appropriate. But in Riley, our Supreme Court heard a similar argument and rejected it. (See, Riley, 137 Wn.2d at 917-918 (Justice Talmadge, concurring.)) Because we are bound to adhere to such precedent, we decline Justice's request.

Next, Justice argues that the trial court erred in excluding evidence that Roy was a gang boss. He argues that the exclusion of evidence regarding Roy's gang affiliation violated his constitutional right to present a defense. But the trial court granted Justice's motion to exclude all references to gangs and gang signs. A party may not set up an error at trial and then complain of it on appeal. State v. Pam, 101 Wn.2d 507, 511, 680 P.2d 762 (1984) (citing State v. Boyer, 91 Wn.2d 342, 588 P.2d 1151 (1979)). "Even where constitutional rights are involved, invited error precludes appellate review." State v. Alger, 31 Wn. App. 244, 249, 640 P.2d 44 (1982). We reject Justice's argument concerning the exclusion of gang evidence.

Justice next argues that the prosecutor committed reversible misconduct by insinuating that Justice's and Shaquina's testimony was not credible. He also asserts that the prosecutor mischaracterized evidence by arguing that Justice was the aggressor.

It is improper for a prosecutor to state a personal belief as to the credibility of a witness. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). However, a prosecutor may "argue an inference from the evidence, and prejudicial error will not be found unless it is 'clear and unmistakable' that counsel is expressing a personal opinion." Id. (quoting State v. Sargent, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)). The prosecutor's arguments here were reasonable inferences from the evidence. The prosecutor did not state a personal opinion or make inferences unsupported by evidence. Justice's claim of prosecutorial misconduct is unavailing.

Next, Justice argues that he received ineffective assistance of counsel. He asserts that his trial counsel prejudiced him by misstating the facts, failing to improve the quality of the video, failing to obtain the testimony of an expert in self-defense, and failing to request an instruction on the lesser-included offense of assault in the second degree. The first argument fails because Justice has not shown that counsel's performance fell below an objectively reasonable standard or that he was prejudiced by any deficiency. Because the record before us is inadequate to review the remaining arguments, they are reviewable, if at all, only by means of a personal restraint petition.

21

Finally, Justice asserts that cumulative error deprived him of a fair trial. The cumulative error doctrine applies only when there have been several errors that standing alone may not justify reversal but in combination have the effect of denying the defendant a fair trial. State v. Davis, 175 Wn.2d 287, 345, 290 P.3d 43 (2012). Here, because Justice has not shown error, the cumulative error doctrine does not apply.

Affirmed.

Spearman, J.

WE CONCUR: