IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37355-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MARGO RENEE THOMAS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Margo Thomas appeals her conviction for assaulting her sister with a wine bottle. She assigns error based on an insufficiency of evidence, a first aggressor jury instruction, ineffective assistance of counsel, and exclusion of some of her expert's opinions. We reject her challenges and affirm her conviction for second degree assault.

FACTS

This prosecution arises from a dispute and altercation between Margo Thomas and her older sister, Sandra Langham, a denizen of picturesque Port Townsend. Before December 9, 2017, the date of the alleged crime, the two sisters visited sparingly.

On December 8, 2017, Margo Thomas traveled to Port Townsend to visit Sandra Langham and shop for Christmas presents. The sisters shopped and ate lunch in Poulsbo before heading to Langham's home where Thomas stayed the night. The following day, the sisters shopped at the Saturday market in downtown Port Townsend. After shopping into the late afternoon, the two ate an early dinner. Langham drank a Kamikaze cocktail with her meal. Thomas imbibed three shots of whiskey.

The sisters perused more shops after dinner before stopping at a grocery store. Sandra Langham purchased a bottle of wine, and Margo Thomas bought whiskey. At 6 p.m., the two returned to Langham's home for the evening. They opened the wine, and Langham built a fire in the wood burning stove. Langham enjoyed two glasses of wine, and Thomas had one. Langham opened a second bottle of wine and left it on the kitchen counter. Thomas opened her whiskey and poured herself a stemmed wine glass full of the malt. The sisters conversed and eventually ventured into the inevitable "past family stuff." Report of Proceedings (RP) at 530. Thomas expressed to Langham that she felt unsupported by her during Thomas' divorce many years earlier. Langham asked Thomas to leave the house because of the mean things Thomas bespoke. The interaction turned physical.

The sisters' versions of events differ concerning their row. According to Sandra Langham, the two yelled and shoved each other. They ended up on the kitchen floor before Margo Thomas struck Langham in the face with a wine bottle, thereby knocking

2

Langham unconscious.  When Langham regained consciousness, she awoke with Thomas

sitting on top of her.  Thomas screamed expletives and hit Langham again.  Langham

asked her to stop before being knocked unconscious a second time.  When she

reawakened, Thomas was gone, and Langham's eye was swollen shut.  Langham ambled

to her neighbor's house for help.  Langham was transported to the hospital where, after a

CT scan, doctors diagnosed her with an orbital floor fracture.  Langham testified at trial

to a blurry memory of the altercation, but that she remembers Thomas smashing the wine

bottle against her face.

According to Margo Thomas, after Sandra Langham asked Thomas to leave the

house, Langham pushed her into the wood stove.  Thomas' head struck the stove, and

Thomas fell to the ground.  The sisters brawled, and Langham repeatedly knocked

Thomas down:

> [DEFENSE COUNSEL]: And what would happen when you'd get knocked down?
> [THOMAS]: Well, the last time that she did it, we were in the kitchen area.  And she, I had gotten up.  I mean, we had knocked bottles over and glasses.  It was a mess in there.  And then she came at me in the kitchen and put her hands around my throat.
> [DEFENSE COUNSEL]: What did you do when she did that?
> [THOMAS]: I couldn't breathe.  I was quite frightened.
> [DEFENSE COUNSEL]: What happened next?
> [THOMAS]: I don't know.
> [DEFENSE COUNSEL]: Did you lose consciousness?
> [THOMAS]: I did.

RP at 532-33.

According to Margo Thomas, Sandra Langham struck her in the head with a fire poker from the wood stove. The blow caused an indent in Thomas' head. Thomas testified that "[t]he entire night goes in and out," and that she has visions of being pushed and strangled by Langham. RP at 552.

At 8:00 p.m. on December 9, 2017, Sandra Langham's neighbor, Jeffrey Johnson, heard a loud crash, screaming, and a thud. Johnson stepped outside to investigate, but saw no emergency. Seconds after reentering his house, a bleeding Langham knelt at his glass front door. Johnson brought Langham inside, applied pressure to her head wound with clean towels, and called law enforcement. Soon after, Johnson spied Margo Thomas stumbling across the driveway with a white pillow under her arm. Johnson left his house and approached Thomas. As Johnson ran to Thomas' vehicle, he smelled a strong odor of alcohol on Thomas. Because he believed that Thomas had beaten Langham, Johnson pressed his body against the car door to preclude Thomas from closing the door and escaping the neighborhood. After Johnson ordered Thomas to sit on the ground, she rushed Johnson and started to push him. Johnson knocked her to the ground and had her sit until officers arrived fifteen minutes later.

Jefferson County Sheriff Deputy Brandon Przygocki responded to Jeffrey Johnson's call for police assistance. Deputy Przygocki observed no injuries on Margo Thomas other than some blood on her right ring finger. Przygocki also noticed blood on Thomas' jacket and hat, but did not seize the clothing as evidence. According to Deputy

4

Przygocki, Thomas was "extremely" under the influence of alcohol.  Thomas never told him that she was injured in the fight or that she had been strangled by her sister.  Instead, Thomas told Przygocki that Sandra Langham injured herself and has "mental health issues."  RP at 400.  Deputy Przygocki also spoke to Sandra Langham, who told him that Thomas hit her in the face with a wine bottle.

Deputy Brandon Przygocki, with assistance from other officers, arrested Margo Thomas.  Law enforcement did not, before placing Thomas in jail, seek a medical evaluation of Thomas because officers concluded she lacked any injuries.

Margo Thomas first sought medical attention on December 12, 2017 at Summit Urgent Care.  Her treating doctor noted that Thomas had elevated blood pressure, tenderness to palpation in the submandibular area, and some "bilateral fullness or swelling in that area."  RP at 484.  The provider also wrote that Thomas had multiple hematomas over her body.

On January 8, 2018, Margo Thomas sought treatment at Puget Sound Ear, Nose, and Throat.  During an examination, Thomas complained of neck pain.  The doctor performed a laryngoscopy and noted Thomas "has normal laryngeal function and no evidence of ongoing swelling or inflammation."  Ex. 26.

Margo Thomas returned to Summit Urgent Care for a follow-up examination on February 24, 2018.  At that appointment, her provider noted a four centimeter long linear indentation along her scalp.  RP 487.  The physician found no other abnormalities.

PROCEDURE

The State of Washington initially charged Margo Thomas with domestic violence assault in the second degree with the level of the assault being based on an assault of Sandra Langham with a deadly weapon, the wine bottle. Later the State moved to amend the information to change the basis of the second degree assault to an intentional assault that recklessly inflicted substantial bodily injury on Sandra Langham. In the intervening weeks, the State had received Langham's medical records that mentioned the orbital fracture.

In response to the State's motion to amend the information, Margo Thomas moved to dismiss for lack of probable cause. Thomas argued that Sandra Langham's deposition testimony established that Langham could not remember the events that caused her injury. The State responded that Langham informed a law enforcement officer at the scene that Thomas hit her with a wine bottle. The State highlighted that an orbital fracture is a serious injury. The trial court granted the State's motion to amend the information and denied Thomas' motion to dismiss the charge. Margo Thomas asserted the defense of self-defense.

Margo Thomas planned to call as a trial witness Jennifer Stankus, M.D., J.D., an emergency room physician, to testify about the injuries Thomas, not Sandra Langham, suffered and the effects of strangulation. Dr. Stankus did not personally examine Thomas or produce an independent medical examination report. Instead, Stankus reviewed

medical records, photographic evidence, and the police reports in forming a medical

opinion.  In a written report, Dr. Stankus wrote:

> I will testify that it is my expert opinion, on a more probable basis
> than not, that there is evidence of strangulation of Margo Thomas in this
> case, and that during the time of strangulation, any level of use of force in
> self-defense would be justified.

Clerk's Papers (CP) at 151.

The State of Washington moved to exclude Dr. Jennifer Stankus' testimony.  The

trial court initially granted the motion in full.  The court reasoned that Stankus solely

relied on Margo Thomas' statements to medical providers as to being strangulated, such

that Stankus' testimony would merely address the credibility of Thomas.  The medical

records mentioned no objective symptoms of strangulation.  Also, the trial court ruled

that Stankus could not provide a legal opinion that any strangulation justified Thomas'

assertion of self-defense.

The trial court later modified its ruling excluding Dr. Jennifer Stankus' testimony

and ruled that Stankus could testify to the contents of Margo Thomas' medical records

and the meaning of medical terms contained in the records.  The court ruled, however,

that Dr. Stankus could not opine that Thomas was "strangled" or use the word

"strangulation," because the word is a "term of art."  RP at 366.  The trial court observed

that Thomas' medical records did not record that Thomas reported being grabbed around

the neck, being strangled, losing her breath, or verging on unconsciousness.  The trial

court affirmed its ruling that Stankus could not testify to Thomas' actions being

"justifiable." RP at 354.

During the jury trial, Sandra Langham's neighbor, Jeffrey Johnson, testified about

his interaction with Margo Thomas the night of December 9, 2017:

> [JOHNSON]: When [Margo Thomas] first came at me, I just went up in a defensive mode and just protected myself. And then she backed off. And she came at me again, and I just put my foot up and held her at bay. And then at some point, I knocked her to the ground. I just, you know, it wasn't that I was fearful that I was going to be injured, it was more I just wanted to protect myself and keep her there. My main objective was just to keep her there until the police got there. And the whole time, I'm talking to 911.
> [THE STATE]: And what are you saying to 911?
> [JOHNSON]: I'm talking to them and I'm like, I'm like 'This is getting way out of control.' And she kept coming at me, and I, I had said, 'Do I need to go get a weapon to defend myself? Because this, you can't keep doing this. Sit down. Sit down on your pillow.' And then she backed off, and she threw everything on the ground, and she said, 'Who are you? Who? And what are you doing?' And I said, 'I'm here to keep you here.' And she goes 'Why?' And I said, 'Because your sister's in my house right now beaten to a pulp.' And I said, 'What's going on?' I was still trying to figure out what was going on. And she said, 'I don't know anything about that.' And I said, 'Are you kidding me?' I said, 'You know nothing about the fact that your sister is bleeding profusely right now?' She goes, 'I know nothing. She's fine. My sister's fine.' And that was when I realized that something was amiss here, that she wasn't accepting culpability or. At that time, I didn't know if it was her actually or not. But when she was aggressive towards me, that was an indicator that something weird was going on.

RP at 317-18.

Sandra Langham testified at trial that she did not see a wine bottle hit her. She just

remembered "boom." RP at 427-28. During cross-examination, Langham conceded that

her sister, Margo Thomas probably sustained injuries during the scuffle, because Langham defended herself and struck Thomas. Langham admitted that her memory is vague concerning events of that night, but she remembered being hit and knocked unconscious. The defense read from Langham's prior deposition testimony:

> [DEFENSE COUNSEL]: So drawing your attention to those lines, the lines of 6 through 11, Ms. Langham, were you asked the question: 'If she had bruises on her neck, could you have caused those?' Answer: 'Yes. I'm sure that anything that she had and anything that I had, my bruises on my neck, my bruises on my back, all the bruises I had, I'm sure she had matching bruises.' Question: 'Why are you sure of that?' 'Because I had bruises all over my neck.' Were you asked those questions and did you give those answers under oath at that deposition on that day?
> [LANGHAM]: Yes.
> [DEFENSE COUNSEL]: Look at the next lines, 7 through 19, please. 17 through 19. Question: 'What caused the bruises to hurt?' Answer: 'Well, if she has bruises on her neck, then I probably put my hands on her neck, but I did not strangle her.' Were you asked that question and did you give that answer?
> [LANGHAM]: Yes.
> [DEFENSE COUNSEL]: Would you agree that you did have your hands on your sister's neck that night?
> [LANGHAM]: What I said was if she had bruises on her neck, then maybe I put my hands on her neck, but I do not remember strangling her, no. That's what I said.
> [DEFENSE COUNSEL]: Is it fair to say that if she had bruises on her neck that you caused them?
> [THE STATE]: Objection. Calls for speculation.
> COURT: Overruled.
> [LANGHAM]: Yeah. Yes. Yes.

RP at 444-45. On re-direct, Sandra Langham reiterated that she did not have a visual memory of Margo Thomas approaching her and hitting her with the bottle, but glass matching the wine bottle later lay everywhere in the house.

9

During trial, Deputy Brandon Przygocki testified about his interaction with Margo Thomas and Sandra Langham.  He also testified to his experience with domestic violence investigations:

> [THE STATE]: On the topic of injuries, you talked already about your training and experience as far as being a drug recognition expert.  Do you have any training and experience specifically with respect to investigating domestic violence crimes?
> [PRZYGOCKI]: Yes, I do.
> [THE STATE]: Okay.  Tell us something about that.
> [PRZYGOCKI]: When we're trained in the academy and through continuing education with domestic violence crimes, the first thing we want to do is determine if there was a crime after securing a scene.  Once we've determined that there has been a crime committed, we determine who the primary aggressor is.
> [THE STATE]: And is that the procedure you followed in this case?
> [PRZYGOCKI]: Yes, it is.

RP at 402-03.  Thomas' attorney did not object to this line of questioning.

Margo Thomas testified that she lacked any memory of striking Sandra Langham in the face with a wine bottle.  The prosecutor asked:

> [THE STATE]: So explain to me how it is that you had to, that you struck your sister in self-defense.
> [THOMAS]: I can't explain that to you.
> [THE STATE]: Okay.  So under oath, as you sit here today, you can't say that you acted in self-defense, can you?  Because you don't remember, do you?  According to what you just said.
> [THOMAS]: That's true.

RP at 555-56.

Margo Thomas' expert, Dr. Jennifer Stankus, testified to injuries that Margo Thomas alleged she sustained during the fight with Sandra Langham.  According to Dr.

Stankus, the medical records show that Thomas injured her neck. Despite the earlier order on limine and over the State's objection, Stankus opined that the injury to the neck was consistent with a strangulation. The trial court sustained an objection to defense counsel's question of whether Thomas' injuries were "likely caused by strangulation." RP 524-25.

The trial court instructed the jury on self-defense as proposed by Margo Thomas. The trial court also gave a first aggressor instruction as proposed by Thomas:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

CP at 213 (jury instruction 13). This instruction is identical to 11 WASHINGTON PRACTICE WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.04, at 256 (4th ed. 2016) (WPIC 16.04).

The State argued during summation that Margo Thomas supplied no testimony of a need to use the level of force attended to smashing of a wine bottle on someone's head. The prosecution emphasized that Thomas failed to pinpoint any moment when she thought to herself "I am about to be seriously injured. It is imminent. I got to defend myself now." RP at 646-47.

The jury found Margo Thomas guilty of second degree assault and entered a special verdict that Thomas and Sandra Langham were members of the same family.

LAW AND ANALYSIS

Sufficiency of Evidence

On appeal, Margo Thomas challenges the sufficiency of the evidence for her conviction for assault in the second degree. She contends the evidence does not support a finding that she did not act in self-defense. The State responds that overwhelming evidence showed Thomas did not act in self-defense when striking Langham with the wine bottle.

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In reviewing a challenge to the sufficiency of the evidence, this court asks if, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). All reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Deference is given to the fact finder on issues of conflicting testimony, credibility of witnesses, and persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

Second degree assault, as charged by the State, required the State to prove that Margo Thomas intentionally assaulted Sandra Langham and thereby recklessly inflicted substantial bodily harm. RCW 9A.36.021(1)(a). When the trial court instructs the jury on self-defense, as here, the State must disprove the defense beyond a reasonable doubt. *State v. Acosta*, 101 Wn.2d 612, 615-16, 683 P.2d 1069 (1984).

Margo Thomas agrees the State proved that she intentionally struck her sister and that Sandra Langham suffered substantial bodily harm. Thomas claims that the State failed to disprove she acted in self-defense at the time she caused Langham injury. Thomas highlights her memory of Langham strangling her to unconsciousness.

One may lawfully use necessary force against another in self-defense. RCW 9A.16.020. RCW 9A.16.020(3) reads that a person may act in self-defense when he or she reasonably apprehends that he or she is about to be injured.

To raise self-defense before the jury, Margo Thomas bore the initial burden of producing some evidence demonstrating self-defense. *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012). Then, the burden shifted to the prosecution to prove the absence of self-defense beyond a reasonable doubt. *State v. Walden*, 131 Wn.2d 469, 473-74, 932 P.2d 1237 (1997) . The jury evaluates evidence of self-defense from the standpoint of the reasonably prudent person, knowing all that the defendant knows and seeing all that the defendant sees. *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993). The degree of force used in self-defense is limited to what a reasonably prudent

13

person would find necessary under the conditions as they appeared to the defendant. *State v. Walden*, 131 Wn.2d at 474; *State v. Bailey*, 22 Wn. App. 646, 650, 591 P.2d 1212 (1979).

We reject Margo Thomas's challenge to her conviction because the trier of fact was not required to believe her testimony. The jury could instead accept Sandra Langham's version of how the altercation transpired. The evidence, in a light favorable to the State, showed that the verbal argument escalated into a physical altercation, during which both sisters pushed each other. Thomas struck Sandra Langham with a wine bottle in the face rendering her unconscious. The jury could conclude the action of Thomas exceeded any level of violence needed to defend herself. The jury could have concluded that, because of the lack of physical injuries to Thomas, Thomas did not need any defense. Also Thomas admitted that she could not remember what led her to act in self-defense. Accordingly, Thomas struggled to show she reasonably apprehended an imminent injury and that using a wine bottle to strike Langham in the face was reasonably prudent.

First Aggressor Instruction

Margo Thomas contends she was denied due process and the right to present a defense when the trial court gave the jury a first aggressor instruction without sufficient evidence to support the instruction and because the court failed to instruct the jury that words alone do not make a defendant the first aggressor. Nevertheless, Thomas never

14

objected to the instruction before the trial court. Instead, she proposed the instruction with the language delivered to the jury. We might deny review of this assignment of error based on invited error, but we address the merits. We would otherwise need to review the merits of the assignment of error because Thomas contends her trial counsel acted ineffectively when proposing the jury instruction.

We first address the sufficiency of evidence for the first aggressor instruction. Jury instruction 13 told the jury that, if Margo Thomas engaged in "any intentional act reasonably likely to provoke a belligerent response" that created "a necessity for" her sister to act in self-defense, the jury should deny Thomas the defense of self-defense. CP at 213.

When the record includes credible evidence from which a reasonable juror could find that the defendant provoked the need to act in self-defense, an aggressor instruction is appropriate. *State v. Riley*, 137 Wn.2d 904, 909-10, 976 P.2d 624 (1999). Whether the State produced sufficient evidence to justify an aggressor instruction presents a question of law that this court reviews de novo. *State v. Anderson*, 144 Wn. App. 85, 89, 180 P.3d 885 (2008).

We generally review the evidence in a light most favorable to the party requesting the instruction. *State v. Wingate*, 155 Wn.2d 817, 823 n.1, 122 P.3d 908 (2005). This rule assumes that the party requesting the instruction defends, on appeal, the validity of the instruction. Margo Thomas, the party challenging the instruction on appeal,

requested the instruction. We, therefore, review the evidence in the light most favorable to the State since the State seeks to defend the instruction on appeal.

Generally, the right to self-defense cannot be "successfully invoked by an aggressor or one who provokes an altercation." *State v. Riley*, 137 Wn.2d at 909 (1999). The trial court may deliver the aggressor instruction when (1) the jury can reasonably determine from the evidence that the defendant's conduct provoked the fight, (2) the evidence conflicts as to whether the defendant's conduct provoked the fight, or (3) the evidence shows that the defendant made the first move by drawing a weapon. *State v. Riley*, 137 Wn.2d at 909-10; *State v. Sullivan*, 196 Wn. App. 277, 289, 383 P.3d 574 (2016). The provoking conduct must be intentional conduct reasonably likely to elicit a belligerent response. *State v. Sullivan*, 196 Wn. App. at 289-90. The conduct cannot be words alone. *State v. Riley*, 137 Wn.2d at 911.

The State relies primarily on *State v. Kee*, 6 Wn. App. 2d 874, 431 P.3d 1080 (2018). The State charged Tiana Kee with second degree assault of Adam Ostrander after she punched him in the face and broke his nose. At trial, Ostrander and his brother, Brandon Lester, both testified that, after their verbal quarrel, Kee struck Ostrander first. Alternatively, Kee and another witness, Cody Bemis, testified that Ostrander hit Kee first. The *Kee* court noted that, regardless of who threw the first punch, both Kee and Ostrander hit each other before Kee finally hit Ostrander and broke his nose. Because of the conflicting evidence regarding whether Kee was the first aggressor and proved the

16

need to act in self-defense, the court held sufficient evidence supported giving the instruction.

We deem *State v. Kee* analogous. Margo Thomas' and Sandra Langham's respective testimony diverges as to who first provoked the assault on Langham. According to Langham, she and Thomas yelled, shoved each other, and, while quarreling on the ground, Thomas struck her in the face with a wine bottle. According to Thomas, Langham provoked the fight when she pushed Thomas into the wood stove. Because of Sandra Langham's testimony, we hold that sufficient evidence supported the giving of the first aggressor instruction.

Margo Thomas next complains that the first aggressor instruction failed to instruct the jury that words alone cannot be the provoking act. She contends that the giving of the instruction, absent the "words alone" language, denied her due process. The State argues the trial court properly instructed the jury because WPIC 16.04 does not include "words alone" language and no evidence suggests that the physical altercation was provoked by words.

As noted earlier, words alone cannot be the provoking conduct that justifies a first aggressor instruction. *State v. Riley*, 137 Wn.2d 904, 910-11 (1999). WPIC 16.04 does not instruct the jury that words alone are not adequate provocation to negate self-defense. Nevertheless, this court, in *State v. Kee*, 6 Wn. App. 2d 874 (2018), reversed a conviction for second degree assault when the trial court failed to instruct the jury that words alone

17

are not sufficient to make a defendant the first aggressor. Margo Thomas argues that

*State v. Kee* required the trial court to instruct the jury that words alone cannot provoke

the assaultive conduct when delivering a first aggressor instruction. We disagree.

   *State v. Kee* holds disparate facts with regard to words provoking an attack. To

repeat, Tiana Kee punched Adam Ostrander in the face, breaking his nose. Kee's and

Ostrander's interaction started with a verbal altercation. Kee exclaimed: "[D]o you want

me to 'F' you[r] little butt up?" before the fight ensued. *State v. Kee*, 6 Wn. App. 2d at

880. Kee also made a derogatory comment before breaking his nose. The State

emphasized during closing argument that Kee initiated the incident by first speaking to

Ostrander in an aggressive manner.

   In *State v. Kee*, the court used a first aggressor instruction similar to the one given

by the trial court here. This court stated:

> When there is evidence that the defendant provoked an altercation
> with words, particularly when the State suggests that those words constitute
> first aggression, the language of WPIC 16.04 is inadequate to convey the
> law established in *Riley*.

*State v. Kee*, 6 Wn. App. 2d at 882. The *Kee* court held that by failing to instruct the jury

that words alone are insufficient provocation for purposes of the first aggressor

instruction, the trial court failed to instruct the jury about the relevant self-defense legal

standards.

18

Neither Sandra Langham nor Margo Thomas testified that Thomas struck Langham due to verbal comments or exchanged threats. Instead, both women testified Langham asked Thomas to leave the house and they yelled at each other before pushing and shoving ensued. The State argued Thomas was the aggressor by her physical conduct, not her words. Therefore, the evidence did not support an instruction about words alone.

Ineffective Assistance of Counsel

Margo Thomas contends her trial counsel performed ineffectively three times. First, her counsel performed deficiently by proposing the first aggressor instruction when no witness testified that she was the first aggressor. Second, her counsel failed to request an instruction that words alone cannot be the act or conduct that provoked the affray. Third, her counsel was ineffective for failing to object to inadmissible evidence.

To demonstrate ineffective assistance of counsel, a defendant must make two showings. First, the defendant must establish that defense counsel's representation was deficient in that the performance fell below an objective standard of reasonableness based on consideration of all circumstances. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Second, a defendant must show that defense counsel's representation prejudiced the defendant. This entails showing a reasonable probability that, except for counsel's errors, the result of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). A reviewing court need not consider both

19

prongs of the ineffective assistance analysis if a defendant fails on one. *In re Personal Restraint Petition of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012).

We apply a strong presumption that counsel's performance was reasonable. *State v. Studd*, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999). When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. *State v. McFarland*, 127 Wn.2d at 336.

We reject Margo Thomas' contention that her trial attorney performed ineffectively when proposing the first aggressor instruction and in drafting the instruction with language that omitted "words alone." We have already ruled that the evidence supported the delivery of the instruction and that Thomas was not entitled to the words "words alone" language. Therefore, Thomas cannot show prejudice by any deficient performance of counsel.

Margo Thomas contends that her defense attorney provided ineffective assistance when she failed to object to testimony from Deputy Brandon Przygocki that, when investigating the altercation between Margo Thomas and Sandra Langham, he followed his domestic violence crimes training to "determine who the primary aggressor is" "once we've determined that there has been a crime committed." RP at 403. Thomas argues that the sheriff deputy offered impermissible and prejudicial opinion testimony. The State responds that defense counsel's decision to not object was for strategic reasons.

When a defendant bases her ineffective assistance of counsel claim on counsel's

failure to object to trial testimony, the defendant must show that the objection would have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). The defendant also must show that the result of the trial would have been different if the evidence had not been admitted. *In re Personal Restraint Petition of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). To prevail on this issue, the defendant must rebut the presumption that counsel's failure to object may be characterized as legitimate trial strategy or tactics. *In re Personal Restraint Petition of Davis*, 152 Wn.2d at 714. For example, trial counsel may not want to object to avoid emphasizing the testimony. *In re Personal Restraint Petition of Davis*, 152 Wn.2d at 714.

To determine whether a witness' testimony constitutes improper opinion testimony, courts consider the type of witness, the specific nature of the testimony, the nature of the charges, the type of defense, and other evidence before the trier of fact. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). When a police officer opines impermissibly, it raises additional concerns because an officer's testimony often carries a special aura of reliability. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007); *State v. Rafay*, 168 Wn. App. 734, 806, 285 P.3d 83 (2012).

We conclude that Deputy Brandon Przygocki's testimony constituted an impermissible comment on Margo Thomas' guilt. Thomas asserted the defense of self-defense at trial. The first aggressor instruction told the jury that it could not consider self-defense as a defense if it found the defendant was the aggressor. Deputy Przygocki

21

told the jurors that he had determined a crime had been committed and that he identified the primary aggressor. Although he did not name Margo Thomas as the primary aggressor, the jurors could have drawn this conclusion because law enforcement arrested her at the scene.

We conclude, however, that trial counsel's failure to object to the testimony did not fall below prevailing professional standards and did not prejudice Margo Thomas. The deputy's testimony regarding his normal practice and procedures, when investigating domestic violence crimes, was limited in nature. Margo Thomas' counsel may not have wanted to risk emphasizing the testimony with an objection. Even without Deputy Brandon Przygocki's opinion testimony, the jury would have concluded that Przygocki considered Thomas to be the first aggressor, since law enforcement only arrested Thomas.

Jennifer Stankus Testimony

Finally, Margo Thomas assigns error to the trial court's exclusion of opinion evidence from her expert witness on the effect of being strangled in a case involving self-defense.

Margo Thomas argues that this court should apply a de novo standard of review to the trial court's exclusion of Dr. Jennifer Stankus' testimony because the trial court's ruling implicated her constitutional right to present a defense. The State argues that an

abuse of discretion standard should be applied. We do not address this question because, under either standard, we would affirm.

A criminal defendant has a right under the Sixth Amendment of the United States Constitution and article I, section 22 (amendment 10) of the Washington Constitution to present a defense. *State v. Maupin*, 128 Wn.2d 918, 924, 913 P.2d 808 (1996). The right to present a defense includes the right to offer the testimony of witnesses and to compel their attendance, if necessary. *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Maupin*, 128 Wn.2d at 924. This includes a defendant's right to put, before a jury, evidence that might influence the determination of guilt. *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). The right to present a defense is not absolute, however, as a defendant has no constitutional right to have irrelevant or inadmissible evidence admitted in his or her defense. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

Margo Thomas contends that Dr. Jennifer Stankus' testimony regarding the effects of strangulation was relevant for the jury to assess whether her fear and use of force was reasonable. She also claims Dr. Stankus' testimony met the admissibility requirements under ER 702.

Under ER 401:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

> action more probable or less probable than it would be without the
> evidence.

Evidence which is not relevant is not admissible. ER 402. Relevance presents a very low bar. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). To be relevant, evidence must meet two requirements: (1) the evidence must have a tendency to prove or disprove a fact (probative value), and (2) the fact must be of consequence in the context of the other facts and the applicable substantive law (materiality). *Davidson v. Municipality of Metro. Seattle*, 43 Wn. App. 569, 573, 719 P.2d 569 (1986). Relevant evidence encompasses facts that present both direct and circumstantial evidence of any element of a claim or defense. *State v. Rice*, 48 Wn. App. 7, 12, 737 P.2d 726 (1987). Facts tending to establish a party's theory of the case will generally be found to be relevant. *State v. Mak*, 105 Wn.2d 692, 703, 718 P.2d 407 (1986).

Margo Thomas retained expert witness, Dr. Jennifer Stankus, who never examined Thomas but formed the basis of her opinion by reviewing Thomas' medical records and the police reports. Dr. Stankus planned to testify that medical evidence supports the claim of strangulation of Thomas by Sandra Langham. She planned to testify about the pain and the panic that strangulation creates and a victim's expected response in self-defense. She also wished to testify that any level of force to stop that threat to life would be justified.

Relying on those same medical records, the trial court saw no objective evidence

of strangulation—only Thomas' self-reporting of strangulation. The trial court ruled that

Dr. Stankus could not testify about strangulation or about any justification for self-

defense as that testimony would express an opinion about the defendant's credibility and

supply legal conclusions.

Under ER 403:

> Although relevant, evidence may be excluded if its probative value
> is substantially outweighed by the danger of unfair prejudice, confusion of
> the issues, or misleading the jury, or by considerations of undue delay,
> waste of time, or needless presentation of cumulative evidence.

While evidence of the effects of strangulation may have been minimally relevant to

Margo Thomas' self-defense theory, any probative value was substantially outweighed

by the danger of prejudice. The medical reports showed no objective evidence of

strangulation. The recording of "strangulation" comes only from Thomas' self-reports to

her doctors that she had been strangled in early December and self-reports that she had

tenderness to palpation on the left side of her neck. When examined three days after the

incident, her provider noted she had full range of motion of her head and neck. A month

later at her January 8, 2018 appointment, doctors performed a laryngoscopy and they

found no evidence of swelling or inflammation.

Additional evidence admitted at trial revealed that Margo Thomas never reported

to the police that she had been strangled. Thomas testified that she has "a vision" from

that night of Sandra Langham strangling her.  RP at 552.  A trial court properly

excludes evidence that is remote, vague, speculative, or argumentative.  *State v. Kilgore*,

107 Wn. App. 160, 185, 26 P.3d 308 (2001), *aff'd* 147 Wn.2d 288, 53 P.3d 974 (2002).

CONCLUSION

We affirm the conviction of Margo Thomas for second degree assault.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:


_____
Siddoway, J.

_____
Lawrence-Berrey, J.